WILL OF GUNDERSON : GREEN and another, Appellants, vs.
GUNDERSON, Respondent.

*December 7, 1926—January 11, 1927.*

*Executors: Claims against estates: Contract that property pass to
designated party at owner's death: Bread-and-butter contracts:
Consideration: Performance: Effect of will subsequently
made: Money as property.*

1. A contract between a son and his seventy-year-old parents by
   which the parents sold to the son their farm and the personal
   property thereon, and provided that all personal property
   owned by them at their death should go to the son in consider-
   ation that he support them and pay them half of the net profits
   of the farm, is enforceable by the son on the death of the
   parents, the son having fully and generously performed the
   agreement; and the entire estate of the father, consisting of
   accumulated cash, is, in view of sub. (31), sec. 370.01, Stats.,
   personal property which passed to the son, although subse-
   quent to the contract the father had executed a will nominat-
   ing the son his executor.  p. 563.
2. A mortgage given the parents as security for the son's obliga-
   tion was extinguished upon the death of the parents after full
   performance of the contract on the part of the son.  p. 562.
3. Both real and personal property are included in the term "prop-
   erty."  p. 563.
4. While the act of the son in presenting the will for probate and
   as the executor thereof in filing an inventory was inconsistent
   with his claim under the contract, it is *held* that, when the con-
   tract is viewed in the light of all the evidence, it clearly shows
   that the father, when it was executed, intended that the son
   receive all the father's property at his death.  p. 565.

APPEAL from a judgment of the county court of St. Croix
county: W. P. KNOWLES, Acting Judge.  *Affirmed.*

In the year 1913 one Peder Gunderson, being then the
owner of forty acres of farming land in the county of St.
Croix, on which was located his homestead and the appurte-
nances thereunto belonging, and which land was stocked with
live stock and supplied with certain farming implements, etc.,

entered into a contract, in which his wife joined, with one *Ole E. Gunderson,* his son, by the terms of which, among other things, the son agreed to support and maintain his parents during the period of their lives and to furnish them with necessary medical aid and assistance in case of sickness, and upon their death to pay the burial expenses.   In addition to the foregoing he also agreed to pay to *George Peyder-son,* Petra Johnson, and *Hannah Green,* three of the children of the said Peder Gunderson, the sum of $100 each, and to Johanna Gunderson, a daughter, the sum of $700, and also to deliver to said Johanna, for her own use and benefit, a cow.  Further, *Ole* agreed to pay to his father and mother and to the survivor, each year, one half of the net profits from the forty acres of land hereinafter referred to and of the cattle and horses maintained thereon.   The contract also contains the following provisions:

"And said parties of the first part, in consideration of the premises, do hereby ratify and confirm the sale of said real estate and personal estate so made this day to the said *Ole E. Gunderson;* . . .

"On the death of said parties of the first part [Peder Gunderson and wife] all personal property owned by them or either of them shall vest in and become the property of *Ole E. Gunderson,* one of the parties of the second part."

Contemporaneously with the execution of the foregoing contract Peder Gunderson executed and delivered to his son *Ole* a deed of his forty-acre farm, and took back a mortgage to secure the performance of the contract.

It appears from the evidence that in 1894, shortly after Peder Gunderson arrived in Wisconsin from Norway, he purchased a forty-acre farm in St. Croix county, where he established his homestead, and there he, together with his wife, his son *Ole,* and his daughter Johanna, resided until the death of both Peder Gunderson and his wife.  *Ole Gunderson,* who in 1894 was about eighteen years of age, co-

operated with his father in the running of the farm, and it appears that their venture was highly successful, for when the contract above mentioned was executed the farm had been cleared of all incumbrances and had been stocked with live stock and supplied with proper farming utensils. It further appears that in 1913, when the contract was entered into, *Ole Gunderson* had acquired forty-seven acres of land in the immediate neighborhood of the forty acres in his own right, and that between that time and the death of his father he acquired additional land, so that in all he owned 144 acres.

When the contract was executed Peder Gunderson had arrived at the age of seventy years, and the recitals in the contract indicate clearly that he realized that his period of life for active service upon the farm had practically come to an end; in fact, his age and condition are recited as the inducing cause for the transactions which then took place. *Ole Gunderson* in 1913, and up to the time of the death of his parents, fully performed his part of said contract. He delivered to his father not only the one-half of the net profits of the forty-acre farm, but, in addition thereto, one half of the net profits of all of the land owned by him, with the exception of twenty-four acres. The farming operations after 1913 became quite profitable; in fact, so much so that the father at the time of his death in 1925 had accumulated about $7,000 in cash.

In 1919 Peder Gunderson executed a last will and testament, in and by which, after bequeathing to his nephew the sum of $200, he gave all the rest, residue, and remainder of his estate to his children, *George P. Pederson, Ole E. Gunderson, Hannah Green,* and Johanna Gunderson, in even and equal parts, and *Ole* was appointed in the will as the executor. This will was admitted to probate upon the petition of *Ole,* whose appointment as executor was confirmed by the court, and proper proceedings were thereupon pursued in said county court in the course of the administration of the es-

tate of the deceased. An inventory was filed, in which the assets, consisting of about $7,000 in cash, were scheduled.

Shortly before the time for creditors to file claims had expired *Ole* filed his claim, based upon the contract above referred to, made in the year 1913, and by and under which he claimed all of the property of the deceased after the payment of the administration and the burial expenses. It also appears from the record that shortly after the death of Peder Gunderson his widow also died.

In its final decree the court assigned and transferred all of the residue of the property of the deceased to *Ole Gunderson;* and from the decree so entered *Hannah Green* and *George Pederson,* two of the children of the deceased Peder Gunderson, and legatees named in the will, have prosecuted this appeal.

Further facts will be referred to in the opinion.

For the appellants there was a brief by *Kelly, Berglund & Johnson* of Minneapolis and *N. O. Varnum* of Hudson, and oral argument by *Olaf R. Kelly.*

For the respondent there was a brief by *Spencer Haven* of Hudson and *S. Swenumson* of Baldwin, and oral argument by *Mr. Haven.*

DOERFLER, J. It is the earnest contention of appellants' counsel that the court erred in assigning the property scheduled in the inventory in the matter of the estate of Peder Gunderson, deceased, to *Ole Gunderson;* that the court erred in its construction of the contract; that the contract, when read in the light of the surrounding facts and circumstances existing at the time of its execution, is ambiguous; and that the surrounding facts and circumstances, together with the acts of the parties, clearly indicate that the money accumulations of Peder since 1913 constituted his own individual property, which he was authorized to bequeath in accordance with his wishes; and that the same did not become the prop-

erty of *Ole* after his father's death, pursuant to the provisions of the contract. On the other hand, respondent's counsel insist that the language of the contract is definite and specific, and that the intention of Peder Gunderson to vest in his son *Ole* not only the forty-acre farm and the personal property contained thereon at the time of the making of the contract, but all personal property of which he might be possessed at the time of his death, is clearly and definitely expressed; and that the contract is therefore not open to construction.

Contracts of the nature of the one herein involved are quite common, and usually are made where conditions exist similar to those in the instant case. The causes which induced the father to execute this contract are apparent in the recitals contained therein. Both the father and the mother had arrived at the age of about seventy years, and they realized that their period of active service had come to an end, and that in all reasonable probability they would require during the remainder of their lives the devoted care, nursing, and attention of the children who had shared their home and who had lived with them as members of one family. So, as a consideration for the contract, the son *Ole* agreed to provide for all the reasonable wants of his parents, to care for them in sickness and in health, and to nurse them and furnish them with medical attendance whenever the occasion so required.

It is quite usual in contracts of this kind that, in addition to what has been referred to, provisions are inserted under which the parents shall be paid stipulated sums at certain times. Such a provision insures for the aged people a degree of independence. In the instant case the contract provides for the payment of one half of the net profits of the operation of the farm and those derived from the live stock. If it appears from the contract that it was the intention of the parents when it was made that *Ole* was to receive not only the land and the personal property in existence when the

contract was executed, but also all of the personal property of which they should be possessed at the time of their death, then any will thereafter made would become ineffective, for the reason that no property could exist upon which a will would operate. The land was absolutely conveyed by deed. The personal property was transferred by the contract itself. Among other provisions the contract contains the following:

"And the said parties of the first part, in consideration of the premises, do hereby ratify and confirm the sale of said real estate and personal estate so made this day to the said *Ole E. Gunderson.*"

No question is raised in this case that *Ole* did not fully comply with his part of the contract. The mortgage which was given for security became extinguished upon the death of the parents and after full performance on the part of *Ole*.

When the contract was made the parents had no other property than that which was transferred thereunder. Looking forward into the future, their material possessions were confined exclusively to one half of the net profits derived from the operation of the farm. With this situation in view the parties to the contract saw fit to include therein a provision which not only covered the real and personal property transferred in 1913, but all personal property owned by the parents or either of them at the time of their death. That paragraph of the contract which is the vital one to be considered in the determination of the issue reads as follows:

"On the death of said parties of the first part, all personal property owned by them or either of them shall vest in and become the property of *Ole E. Gunderson,* one of the parties of the second part."

In view of the situation, the parents could have had in mind no other personal property than the accumulations of money.

Sub. (31), sec. 370.01, of the Statutes defines personal property as follows: "The words 'personal property' include

money, goods, chattels, things in action and evidences of debt." In general, by "property" is meant either real property or personal property. A promissory note has been held in *Wayland University v. Boorman,* 56 Wis. 657, 14 N. W. 819, as personal property. Such is also the holding in *La Crosse Nat. Bank v. Wilson,* 74 Wis. 391, 43 N. W. 153, and *Storm v. Cotzhausen,* 38 Wis. 139. See, also, 22 Ruling Case Law, 63.

The contract also contains a provision by which *Ole* was obligated to pay, within one year after the death of his father, certain sums of money aggregating over $1,000. While this provision is not by any means conclusive that the father had in mind that he would have no property to dispose of by will, nevertheless it is rather persuasive. But as heretofore stated, we are convinced that the contract in itself is clear and unambiguous and that it bears upon its face the intention of the father to transfer all of his property which he owned or possessed, not only at the time of the making of the contract but also that owned by him at the time of his death.

Viewing the contract, however, in the light of the surrounding circumstances and of the evidence contained in the record, we nevertheless are of the opinion that it was the testator's intention that at the time of his death his son *Ole* should be entitled to all of his property. When the father arrived at the age of seventy years, fully realizing his infirmities, he concluded to part with his possessions under such circumstances as would leave them largely to his favored and faithful son, in whom he placed implicit faith and trust that such son would devote his best efforts to provide for him and his wife everything reasonably necessary for the balance of their years. The father's active period of life had passed. No one could foretell in 1913 how long the parents would live. Under the very terms of the contract the father was relieved from the performance of manual labor. It is

quite clear that when the contract was made, neither the father nor the son could foresee the profitable years which followed the great World War. There is no evidence in the record to indicate that the father, at any time prior to 1919, ever contemplated the making of a will. These large accumulations on the part of the father were made possible principally by conditions resulting from the war, which resulted in an unusual and enhanced rise in prices of the products of the farm. In fact, farm products during that period commanded a price unprecedented in the history of the country, and it was only after he received the large profits resulting from the war that his mind began to dwell upon the disposition of the same by will.

It is very seldom indeed that the conditions of a contract for support are so fully and generously executed as appears in the instant case. The son not only performed his legal obligations by paying his father one half of the net profits of the forty-acre farm and of the personal property, but in addition thereto he handed him one half of the net profits of his entire land, with the exception of twenty-four acres. If it became necessary to determine the issue herein from the acts of the parties, this generous and whole-souled contribution on the part of the son for the welfare of his parents would be not only persuasive, but nigh conclusive, that the son expected to receive from his father what accumulations were left at the time of the latter's death.

There is no evidence in the case that the son knew of the provisions of the will prior to the father's death, and under the circumstances it must be presumed that, notwithstanding the son's knowledge of the making of a will in 1919, he had no reason to infer otherwise than that the will would be confirmatory of the provisions of the contract. A will is a sacred document, and under the statutes it is the duty of the executor to present the will for probate. Conceding that the filing of an inventory which scheduled property of the value

of about $7,000 presents a rather inconsistent attitude on the part of the son while acting as executor, and conceding further that statements made by him with respect to the provisions of the will are somewhat irreconcilable with his present position, which is based solely upon the contract, nevertheless, viewing the contract in the light of all the evidence, we are satisfied that the father when he executed the contract clearly intended that the son should receive the property he owned at his death.

*By the Court.*—The judgment of the county court is affirmed.