ESTATE OF JACOBUS: COON (individually and as executor), Appellant, vs. ROGERS and others, Trustees, Respondents.

*January 8—February 6, 1934.*

For the appellant there was a brief by *Lockney & Lowry,* attorneys, and *Richard N. Hunter* of counsel, all of Waukesha, and oral argument by *Mr. Hunter* and *Mr. Henry Lockney.*

For the respondents there was a brief by *Bottum, Hudnall, Lecher, McNamara & Michael,* and oral argument by *George D. Spohn,* all of Milwaukee.

FRITZ, J. In addition to the matters stated in the preceding statement, it is necessary to note the following undisputed facts: On December 16, 1925, Mrs. Jacobus, who was then of sound mind, applied, in writing, for admission to the Masonic Home at Dousman, Wisconsin, which was under the management of the Trustees of the Most Worshipful Grand Lodge of Free and Accepted Masons of the State of Wisconsin (hereinafter referred to as the "Trustees"). Her application was accepted and she entered the Home on January 6, 1926, received good care and attention, and remained there until her death. In a will made prior to her admission to the Home she designated her grandson, Paul H. Coon, as executor and sole beneficiary. Their relations were intimate and affectionate. Before she entered the Home he had maintained her in his personal household in St. Louis, until his work required him to reside elsewhere.

In the application which she signed as a condition for admission to the Home, there was the following agreement:

"As a condition for admission to the Wisconsin Masonic Home, I hereby agree . . . to transfer to the Trustees . . . all property, real and personal, I may now be possessed of or entitled to, and all which may hereafter come to me from any source whatever. . . . The *return* of property is to be made to me as provided in paragraph 14 of the Rules for Admission to the Home."

The only provision in respect to the *return* of property, which was embodied in paragraph 14, is as follows:

"If any resident, who has surrendered such property or income, shall withdraw from the Home, or shall be discharged therefrom for cause, the Grand Lodge shall withhold from the amount so transferred or surrendered the sum of ten dollars per week for the time said resident has been living in the Home, and the remainder, if any, of said amount shall be returned to the said resident upon such withdrawal or discharge."

Preceding that provision in paragraph 14, there was also the following provision:

"The Home having been established for the care of the destitute only, all persons who shall be admitted as residents must *transfer* all their property, real and personal, to the Trustees ,. . . . to be added to its Masonic Home Fund, and in the event of their receiving by legacy, bequest, or in any other manner while such residents, any real or personal estate, such estate, property, or property rights, must in like manner be transferred to said Grand Lodge Trustees, except that such resident may have the option of so doing or of accepting honorable discharge from the Home."

However, the provision last quoted was not in any manner, by express words of reference or otherwise, made part of the contract between Mrs. Jacobus and the Trustees.

Upon her entry into the Home, she turned over to the Trustees the sum of $125, which was all she then had. Sub-

sequently she became mentally incompetent. In 1929 Coon learned that she had become entitled to a legacy of $5,000 under the will of Jennie A. Thorne, deceased. He established the identity of Mrs. Jacobus as a legatee, and then in order to have a guardian appointed for her in St. Louis, he went to the Home to obtain her written consent to such an appointment. He was not permitted to obtain her signature, but upon the petition of the superintendent of the Home, and without any actual notice to Coon, Frank F. Kipp was appointed general guardian by the county court of Waukesha county. As guardian, Kipp placed $5,181.65, which he had received as guardian for Mrs. Jacobus, in a certificate of deposit in a bank, payable to himself individually, and it remained in that form until attention was called to the form of the certificate on a hearing in the county court. After the appointments of the guardian and the executor, the Trustees filed petitions in both the guardianship and the probate proceedings for the performance of the contract between them and Mrs. Jacobus by the transfer of her after-acquired property, as stated above. Kipp's activities as guardian had been confined to the receipt and deposit of the money, and he had exercised no functions as guardian of Mrs. Jacobus' person. He saw her only casually when other duties in connection with the operation of the Home took him there. At no time while Mrs. Jacobus was in the Home did she ask to withdraw, and her guardian did not make any application for her withdrawal. Some time after the legacy became payable to her, Coon attempted to make an application for her withdrawal, but that was never carried out.

Mrs. Jacobus' obligation to transfer property to the Trustees was fixed by the terms embodied in her written, signed application, which constituted the contract between her and the Trustees. Those terms required her to transfer to the Trustees "all property, real and personal, I may now be

possessed of or entitled to and all which may hereafter come to me from any source whatever." That requirement as to the *transfer* of property by her is definite and absolute, without any provision or condition as to any option or election on her part. Neither by any words embodied in the contract, which can be considered as part thereof, or by reason of any words of reference therein, is her obligation to *transfer* property conditional or optional in any respect. On the other hand, in relation to the *return* of property, there is in the contract the following express provision:

"The return of property is to be made to me as provided in paragraph 14 of the Rules for Admission to the Home."

Upon examining that portion of paragraph 14 which relates to the return of property (which has hereinbefore been quoted), it will be noted that that provision as to the return of property relates only to property which has previously been transferred to the Trustees. By virtue of the words "if any resident, who has surrendered such property or income," in that provision, its effect is confined to property which had been surrendered. "If any resident, who *has* surrender*ed* such property or income, shall withdraw from the Home or shall be discharged therefrom for cause," then— and only then, as to the property which has theretofore been transferred—does the provision as to the return of property become operative. It is only then that "the Grand Lodge shall withhold from the amount so transfer*red* or surrender*ed* the sum of ten dollars per week for the time said resident has been living in the Home, and the remainder, if any, . . . shall be *returned* to the said resident upon such withdrawal or discharge."

True, in paragraph 14 there is also a provision that, in the event of a resident's receiving property while a resident, it "must in like manner be transferred to said Grand Lodge Trustees, except that such resident may have the option of

so doing or of accepting honorable discharge from the Home." However, that provision is no part—either by incorporation therein, or by words of reference therein—of the contract which Mrs. Jacobus signed. Under that contract as signed, there is nothing which makes the provision in paragraph 14 as to the *transfer* of property a part of that contract. Under the familiar rule of construction, *Expressio unius est exclusio alterius,* as the provision in respect to the return of property, which is in paragraph 14, is, on the one hand, by express words of reference in the contract made part thereof, and, on the other hand, the other provision in paragraph 14 in respect to the transfer of property is not referred to at all in that contract, the latter provision must be deemed excluded from the contract.

As Mrs. Jacobus' obligation to transfer after-acquired property to the Trustees was absolute, and not dependent upon the further exercise of any option or election by her, the Trustees' right to the performance of that obligation was not dependent upon her continuing to possess mental capacity to contract. As her obligation in that respect had become fixed and absolute when she was accepted as a resident of the Home, it continued in effect and was enforceable as long as her residence at the Home was not lawfully terminated prior to her death, even though she became mentally incompetent. None of the grounds upon which appellant relies in endeavoring to avoid the performance of Mrs. Jacobus' contractual obligation to transfer the property in question afford sufficient legal basis for denying the right of the Trustees to recover for the failure to perform that obligation.

If Mrs. Jacobus was mentally incompetent when the Thorne legacy was payable, the appointment of a guardian was, of course, necessary in order to receive and receipt for that legacy. In the guardianship proceedings it was proper

for the Trustees to file their claim for the enforcement of her contractual obligation to transfer to them the money received by her guardian on her behalf in payment of that legacy. As that money is not property which is of such unique or peculiar nature that it has some special value, there is applicable the rule that "compensation in damages is considered and held to be an adequate remedy for the breach of an executory contract to sell or purchase, especially where no trust relation exists between the parties." *Avery v. Ryan,* 74 Wis. 591, 600, 43 N. W. 317. The compensation in damages in this case consists of all the money constituting the proceeds of the after-acquired legacy which was to be transferred in performance of Mrs. Jacobus' obligation. At all events, under the circumstances, the ultimate result as far as the amount that will be received by the Trustees is concerned, is substantially the same, whether the recovery for the breach of Mrs. Jacobus' obligation is by granting specific performance, or by awarding compensation in damages. In either case the fund is subject to charges and expenses necessarily incurred in the guardianship and probate administration proceedings in order to obtain possession of the legacy in the first instance, and thereafter to conserve and turn over the equivalent thereof to and through such representatives of Mrs. Jacobus, while living, and of her estate, upon her decease, as were necessary in law to hold and administer the fund until final adjudications in those proceedings. As no legal transfer or assignment of the funds in the possession of Kipp as guardian had been made or effected to the Trustees up to the time of Mrs. Jacobus' death, the legal title thereto was still in her when she died, and upon her death it passed, just as if there had been no guardianship proceedings, to her personal representative to be appointed to administer her estate. Upon her death the powers of the guardian ceased. Thereafter he had no au-

thority or power, and could not legally transfer or assign the fund in her name to the Trustees. He could only account and turn over to the representative of her estate in probate the money which he, as guardian, had received and deposited in the bank. *Glasspoole v. McGuine,* 143 Wis. 294, 127 N. W. 997; *Estate of Kirkendall,* 43 Wis. 167, 179; *Murphy v. Hanrahan,* 50 Wis. 485, 490, 7 N. W. 436; *Buttles v. De Baum,* 116 Wis. 323, 93 N. W. 5; *Stehn v. Hayssen,* 124 Wis. 583, 102 N. W. 1074; *Palmer v. O'Rourke,* 130 Wis. 507, 110 N. W. 389. Consequently the order appealed from is erroneous in so far as it required Kipp, as the general guardian, to pay directly to the Trustees all moneys remaining in the guardianship estate, after paying the amounts allowed to him in his guardianship account. That order must be reversed, and the record remanded with directions to enter an order in the guardianship proceedings directing the guardian to pay Coon, as executor, the money remaining, after first paying the amounts allowed in the guardian's final account. Thereupon, in the probate proceedings, an order should be entered requiring Coon, as executor, to pay to the Trustees the money received by him as executor from Frank F. Kipp as guardian, less such amount as is allowed in the executor's final account.

*By the Court.*—Order reversed, and cause remanded with directions for further proceedings and the entry of orders as stated in the opinion.