IN RE BRATT: NATIONAL CASUALTY COMPANY and another, Appellants, vs. BRATT and another, Respondents.

*June 7—September 6, 1950.*

448

BROADFOOT, J., dissents.

For the appellant National Casualty Company there were briefs by *Bassuener, Humke, Poole & Axel,* and oral argument by *John F. Poole,* all of Sheboygan.

For the appellant Indemnity Insurance Company of North America there were briefs by *Bie, Welsh, Trowbridge & Wilmer,* and oral argument by *Lloyd J. Planert,* all of Green Bay.

For the respondent Sonya A. Bratt there was a brief by *Hall & Griffith* of Madison, and oral argument by *Paul Griffith.*

*H. Maxwell Manzer* of Madison, for the commissioner of banks.

FAIRCHILD, J.   Under sec. 218.04 (9m), Stats., the commissioner of banks is required in circumstances such as admittedly exist here with relation to the solvency of the agency operated by George C. Bratt to "take possession of the assets and the books and records of the licensee for the purpose of liquidating its business." The effect of this is that the commissioner brings together the property of the collection agency in order that the same may be divided agreeably to the provisions of the statute. In the words of the statute, the commissioner is "vested with title to all of the assets including the proceeds of the bond or bonds which have been filed with the commissioner as provided for under subsection (3) (d) [218.04], and the proceeds of any and all money paid direct to the claimant or forwarder by the debtor prior to the date said license has terminated." (Sec. 218.04 (9m) (a).)

The assignment reads:

"Now, therefore, for value received, I hereby sell, assign, and transfer unto G. M. Matthews, commissioner of banks of the state of Wisconsin, as liquidator of the Security Service Bureau under the provisions of section 218.04 (9m), for the benefit of the creditors of said Security Service Bureau, all my right, title, and interest in and to the insurance policies above named and described. . . ."

The trial court in admitting parol evidence must have been of the opinion that the assignment was an absolute assignment in form while intended to be collateral security, and that therefore the assignment, while absolute in form, was within an exception to the parol-evidence rule. A careful reading of the assignment in connection with sec. 218.04 (9m), Stats., discloses the purpose to, and it does no more than, create an assignment of the policies to the commissioner of banks in trust for the benefit of the creditors of George C. Bratt, operating a collection agency styled as the Security Service Bureau. Any funds not used under the statute re-

ferred to in the assignment belong to the assignors. It is, as urged by appellants, an assignment to a trustee. It is stated in the assignment to be, under the provisions of sec. 218.04 (9m), "for the benefit of the creditors of said Security Service Bureau." This statement in the writing rules out the claim of an exception to the parol-evidence rule on that score. The purpose of the assignment for the benefit of creditors, with a provision for a return of any excess to the assignors, not only plainly appears from the language used, but all implications and inferences support only that arrangement, and was to do nothing more than transfer to the trustee or liquidator the owners' interest in the life insurance policies for the benefit of the creditors of George C. Bratt. Any excess after debts of the agency have been paid is to be returned to assignor, George C. Bratt. This being the proper reading of the written words under all legal and equitable rules, the ruling below must be reversed, unless under the circumstances the contention of respondent that the appellant sureties are strangers to the writing must be accepted as correct.

The commissioner of banks has filed a brief in which he asserts that the sureties are strangers to the assignment because "at the time of the assignment they were not creditors—they had not invested a dime. The commissioner of banks only represented 'claimants' or 'forwarders.' " The commissioner of banks is a public official. The contract was not between private parties. The commissioner represented interests which were not private and peculiar to him as an individual. The powers conferred and the duties to be discharged are to be found in the statutes. 42 Am. Jur., Public Officers, p. 881, sec. 3; 46 C. J., Officers, p. 1037, sec. 305. And in dealing with him the owner of the collection agency and his wife were bound by such restrictions as actually existed. Had they, previously to the time of the commissioner taking charge, favored some claimants by paying them

in full out of part of the insurance policy, would it not have been his duty to recover that amount for the benefit of the fund? The commissioner says the sureties had not invested a cent at the time the assignment was made, but the title to any claim arising out of the sureties' liability was already vested in the commissioner by virtue of the statutes under which the commissioner was acting. A mistake of law is not the usual one entitling the complaining party to relief.

This contention of the commissioner also overlooks the rights of the sureties to be subrogated to those of claimants whom they have reimbursed. A creditor is one who has a right to require the fulfilment of an obligation of a contract, and upon the payment by the sureties of the claims against George C. Bratt they are to be subrogated to the rights they have protected, and an obligation to them results from those payments. The commissioner knew at the time of the assignment that the bonding companies' liability would exist, and that a considerable amount would have to be paid by each one of the sureties. He also knew that there would be demands exceeding the amount for which they had contracted to be sureties.

So we must deal with the questions as to whether this is a matter of mistake of law and whether the parol-evidence rule will afford the relief sought by Sonya Bratt. When the assignment was made for the benefit of the creditors under and by virtue of the particular statute covering such cases, and the words "for the benefit of the creditors," "claimants," or "forwarders" were used, the liquidator expected there would be a necessity for additional funds. The statute nowhere gives the liquidator or the debtor the right to prefer any group of creditors or to discriminate against any individual creditor. When the commissioner takes possession he is vested not only with the title to all of the assets, including the proceeds of the bonds, but of any preferences resulting from payment of funds "to the claimant or forwarder by the

debtor prior to the date said license has terminated." And in sec. 218.04 (9m) (g), Stats., it is provided that when the commissioner shall have paid to each and every claimant or forwarder of such collection agency the full amount of such claim and shall have made proper provision for unclaimed and unpaid collection and paid all the expenses of liquidation, if there remain any assets, exclusive of the proceeds of the bond or bonds, he shall liquidate them for the benefit of the general creditors. He is not to use the proceeds of the bonds if out of the assets the full amount of claims can be paid. If the debtor had secretly turned over to certain claimants the proceeds of the policies, a duty would arise compelling the liquidator to restore the funds to his common fund.

There are many instances to be found where the written memorial of the agreement may be reformed so as to correct an error, but courts have had great difficulty in deciding whether relief should be accorded where the mistake is shown to have been other than a mistake of fact. It has been said that the important question is, after all, whether the case falls within the fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or of fact entertained by both parties, 19 Am. Jur., Equity, p. 82, sec. 64. Examining the question now before us, we must take notice of the fact that while Mr. Bratt and his wife voluntarily put into the hands of the liquidator certain property, they did it for the benefit of Mr. Bratt's creditors. Whether or not they were conscious of the true policy and exact duty of the commissioner of banks, they used the word "creditors," and the significance which attaches to that word, under the statutes relating to the very matter which the commissioner of banks was required to administer, is the mistake which must be considered. The mistake was as to the standing of the sureties in relation to the fund. Their right to subrogation gave them, upon payment, the character of creditors and

entitled them to the benefits arising by subrogation out of their suretyship. The commissioner as the liquidator was bound by the statute to conserve the accumulated fund for the benefit of those entitled to it. His misunderstanding of the term "creditor" does not of itself bring the case under the fundamental rule against unjust enrichment, especially where it is plainly the policy of the law to protect equally all having just claims against the agency, and in view of the fact that as soon as the assignment was executed the interests of all creditors attached. As to the facts which may be recited as bearing upon the point of unjust enrichment, there was no occasion or right for creating classes of creditors, one of which could be preferred over another. The money of the sureties was taken from them, and they were entitled to recover it in the same proportion as much as any creditor was. The money was taken from them to meet demands upon George Bratt. The assignment was of the entire interest in the life insurance policy, and it having reached the funds in the hands of the commissioner, it became his duty to so administer it that all creditors would be justly treated. His impression that he could eliminate from the benefits of the accumulated funds certain creditors must be ruled as contrary to public policy. Then, too, there are the personal considerations peculiar to the situation in which George C. Bratt had placed himself by failing to account for money coming into his possession. The willingness of the assignors to put additional resources at the disposal of the commissioner on terms which would bear to some creditors some advantages not going to others turns the scale of unjust enrichment against respondent.

There is no claim that Sonya Bratt was not a person of reasonable understanding, such a one as is supposed to know the law and to act upon the rights which it confers or supports, knowing all the facts. The circumstances here do not bring before the court a person entitled to set up the claims which she advances. The plan of her husband and herself

does not exactly square with equitable requirements. There was considerable embarrassment in this situation. As to the point that other parties are interested in the transaction and entitled to consideration in the absence of fraud perpetrated upon her, the moment the contract was signed those parties, all creditors of George C. Bratt arising out of his relation between them and his collection agency, became third-party beneficiaries. The doctrine established may be found concisely stated in the syllabus of the decision of *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440. That doctrine has been approved repeatedly, and it is again stated in *Smith v. Pfluger,* 126 Wis. 253, 105 N. W. 476, to the effect that "If a person makes a contract with another for the benefit of a third person, the latter may enforce it at law regardless of his relations with the first person, or whether he had· any knowledge of the transaction between such person and such other at the time of its occurrence, and regardless of any formal assent thereto on his part prior to the commencement of the action."

Under that rule this assignment gave or transferred proceeds of two policies to the commissioner of banks for the benefit of the creditors of George C. Bratt, and the sureties are entitled to an enforcement. There is no mistake of fact confronting us here. There is nothing which can be called fraud or treated as fraud involving any moral guilt. The interests of a third-party beneficiary exist in the case. The contract and its construction have passed beyond the control of the respondent and the commissioner of banks. The court is prevented from giving any relief by resorting to parol evidence. The sureties are interested parties. The order must therefore be reversed and cause remanded with directions to grant the prayer of the appellants.

*By the Court.*—Order reversed and cause remanded with directions to deny the petition of Sonya A. Bratt, and for further proceedings according to law.

Broadfoot, J., dissents.