Estate of Cochrane: Seher, Administrator w.w.a.,
Appellant, v. Kurz, Respondent.

*March 10—April 4, 1961.*

For the appellant there were briefs by *Orth, Riedl & Orth,* attorneys, and *Harold M. Frauendorfer* and *Carlton Roffa* of counsel, all of Milwaukee, and oral argument by *Mr. Charles A. Orth* and *Mr. Frauendorfer.*

For the respondent there was a brief by *Paulsen, Wake & Prosser,* and oral argument by *Van B. Wake* and by *John F. Zimmermann,* all of Milwaukee.

Brown, J. It appears that by the agreement in 1940 Cochrane promised and agreed to transfer to Miss Kurz, by his will, all the right, title, and interest which Cochrane may have at the time of his death in and to all property real, personal, or mixed, and, by his actual last will and testament, he breached the agreement.

Appellant now does not urge several propositions which he presented to the trial court. We will pass only on the contentions which he submits here.

His first proposition is that in 1936 Cochrane and Miss Kurz made a contract partly for the benefit of a third party, Alexander MacKenzie, and the 1940 agreement is void and of no effect because it alters the terms of the 1936 agreement. The administrator submits that parties executing a contract partly for the benefit of a third party cannot rescind the contract without the consent of the third-party beneficiary, which in this case was not obtained. The rule of law is not as appellant asserts it to be. The leading case in this state is *Tweeddale v. Tweeddale* (1903), 116 Wis. 517, 93 N. W. 440, cited by appellant, and that decision has been uniformly followed. *Tweeddale,* indeed, holds that contracting parties whose contract has provided benefits to a third party may not revoke such benefits without the consent of the third-party beneficiary. But *Tweeddale* does not say that the contracting parties are forbidden to modify their obligations as between themselves so long as they do not interfere with the established rights of the third party. The holding of the supreme court was (p. 526) :

". . . that the liability being once created by the acts of the immediate parties to the transaction and the operation of the law thereon, neither one nor both of such parties can thereafter change the situation *as regards the third person without his consent.*" (Our italics.)

The attempted modification in the *Tweeddale Case* was to cancel the mortgage in which a third party had acquired

a beneficial interest and the third party brought the action to enforce his mortgage rights. He had not consented to the satisfaction of the mortgage and we held, page 527, "that the satisfaction of the mortgage by Mary Tweeddale is void *as regards such debt.*" (Our italics.) *Tweeddale* goes no further than to protect the third party's rights established by the original agreement. Other cases cited by the appellant conform to the *Tweeddale* holding as *In re Bratt* (1950), 257 Wis. 447, 43 N. W. (2d) 817, and *Micek v. Wamka* (1917), 165 Wis. 97, 161 N. W. 367. In the latter, at page 102, we said:

"Any attempt by the defendants and the purchaser, Wilson, to rescind the contract, or their refusal to carry it out for any reason whatever, *cannot affect the rights of the plaintiffs.*" (Our italics.)

In all the Wisconsin cases called to our attention where this court has discussed the inviolability of the original contract, the third-party beneficiary has been attempting to preserve the rights given him by contract and those are the rights which we have protected. We do not find that we have ever attempted to say, as appellant wishes us to, that the contracting parties may not by agreement do as they please in altering the original terms so long as they do not alter the beneficiary's rights without his consent. We conclude that the contracting parties have that right of modification as between themselves as in other contracts. MacKenzie's rights established by the 1936 contract were left untouched by the 1940 modification. Cochrane and Miss Kurz were competent to change their obligations toward each other since the change did not alter the rights of MacKenzie.

Next, appellant asserts that the 1940 agreement required Miss Kurz to get back from Alexander MacKenzie for Mr. Cochrane the one-third interest which MacKenzie had ob-

tained by the 1936 agreement, and Miss Kurz has not performed that requirement, wherefore Cochrane was not obligated to leave a will giving her all his estate. Inspection of the 1940 agreement shows no such duty to be performed by Miss Kurz. Respecting reconveyance to Cochrane, the agreement specifically provides that she is to reconvey to him the property which *she* acquired by the 1936 agreement, and this she did by executing the 1940 agreement.

Next, appellant submits that there was testimony relating to transactions with Cochrane, now deceased, which was not admissible in evidence. Consequently, appellant asserts, there was not sufficient competent, credible evidence to support the findings of the trial court. The evidence referred to is the testimony of Martin Paulsen, who testified at length concerning the agreements of 1936 and 1940, at which Paulsen was present when those documents were negotiated and executed, and he testified also concerning the will of Cochrane executed simultaneously with the agreement of February 19, 1940. Paulsen drew the will contemplated by the 1940 agreement which will, itself, referred to the agreement. Appellant's objection is that there was a confidential relationship between the testator and the lawyer who drew it, Paulsen, and the communications between them are privileged. We do not decide whether the communications were privileged under the circumstances in which the will was drawn because, even if these objections are well taken, they do not affect the result here. Any possible relationship of attorney and client between Mr. Cochrane and Mr. Paulsen pertained only to the drafting of the will. In every other respect during the negotiation of the 1940 agreement Mr. Paulsen was Miss Kurz's attorney. The communications pertinent to the 1940 will and that will, itself, are irrelevant to the present controversy. The 1936 agreement, as admitted

by appellant, was a valid contract between Cochrane and Miss Kurz entered into upon good consideration. Her 1940 reconveyance of rights given to her by the 1936 agreement was consideration for the promise contained in Cochrane's 1940 agreement to leave to her his entire estate. It is immaterial whether Cochrane executed the will which he had agreed to make. Paulsen's testimony concerning the negotiation, drafting, and execution of that will is equally immaterial. On this question it makes no difference whether Cochrane failed to make such a will or whether he made it and then revoked it. The important thing is that upon his death he did not transfer by last will all his property to Miss Kurz as he had contracted to do. His failure to do so was a breach of his agreement. The trial court needed no more in order to determine that Cochrane had made a valid contract by the agreement of 1940 and that he had breached the obligation imposed on him by that contract.

Appellant submits that, if Miss Kurz may recover at all upon this claim, her recovery is limited to the 1940 value of the two-third's interest she surrendered as her consideration for such contract.

To support his contention that the measure of the promisee's damages is not the value promised in the contract by the promisor but is properly measured by the value of the consideration given by the promisee, appellant cites *Murtha v. Donohoo* (1912), 149 Wis. 481, 134 N. W. 406, 136 N. W. 158; *Frieders v. Estate of Frieders* (1923), 180 Wis. 430, 193 N. W. 77; and *Estate of Gerke* (1955), 271 Wis. 297, 73 N. W. (2d) 506.

In each of such cases there was a promise to provide a legacy and the promise is based upon a past or executed consideration. It is upon the fact that the consideration antedated the promise of a legacy that the court in those cases determined the measure of damages as it did.

In the *Murtha Case,* at pages 485 and 486, we said:

"The agreement being valid and binding, what is the measure of damages for its breach—the value or amount of the original demand or the amount of legacy promised? In a case like the present, *where the promise to compensate by legacy is based upon a past or executed consideration,* the recovery must be limited to the amount of the demand so to be compensated, or the reasonable value thereof where the amount is not fixed and definite. . . . [Italics ours.]

". . . we must hold that the promisee suing to recover for a breach of agreement to provide for him by will, where the services are performed prior to the promise so to provide, is entitled to recover only the reasonable value of the services so performed."

The *Frieders* decision on the measure of damages was directly based upon *Murtha v. Donohoo, supra.* We said, in *Frieders,* at page 433:

"We can see no substantial, if indeed there be any shadow of, distinction between this and the *Murtha Case.* In both cases that which gave rise to a liability on the part of the deceased to the claimant had occurred before the promise was made."

We applied the *Murtha* rule of damages in the *Frieders Case.* In *Estate of Gerke, supra,* we applied the rule of the *Murtha* and *Frieders Cases,* where the consideration which passed to the promisor was antecedent to the promise. The *Gerke* opinion, at page 302, contains a sentence that "it makes no difference to this claim when the services were rendered." It made no difference on the effect of the statute of limitations, and that is the context of the paragraph in which the sentence appears. On the issue of the measure of damages it matters greatly that the promisee's services were rendered long before the making of the promise to compensate by legacy. It is that difference in time which brings into operation the rule used in the *Gerke Case* as previously

applied in the *Murtha* and *Frieders Cases* upon which the *Gerke* decision was founded.

On the other hand, to oppose appellant's authorities on damages, respondent brings before us a series of cases which were decided in fairly rapid succession and in each of which the consideration given by the promisee was either contemporaneous with the promisor's agreement to compensate by a legacy or the promisee's performance came after the agreement and was in reliance on it. In each such case we held that the damages for the breach of the promise were measured by the terms of the agreement itself. Thus, in *Dilger v. Estate of McQuade* (1914), 158 Wis. 328, 148 N. W. 1085, for a consideration, given simultaneously with the promise, McQuade promised to leave his estate to the claimant. McQuade died intestate leaving an estate of less than $10,000. The claimant filed for $10,000. The county court allowed him the value of the net estate. There was an appeal to the circuit court, which reversed the county court and that judgment was appealed to the supreme court. There we said that a written contract, founded on valuable consideration, to devise and bequeath real and personal property is valid and capable of enforcement. We reversed the circuit court and reinstated the judgment of the county court.

In *Will of Gunderson* (1927), 191 Wis. 557, 211 N. W. 791, for present and future services Gunderson promised that on his death all of his personal property should vest in his son, Ole. Ole performed but Gunderson left his property equally to all his children. The county court assigned the property to Ole and we affirmed. The measure of damages was not discussed, possibly because the reasonable value of the services was worth more than the value of the property involved.

In *Estate of Getchell* (1933), 211 Wis. 644, 247 N. W. 859, there was a valid contract whereby one Burnette agreed to perform future services for Getchell in return for which

Getchell promised to bequeath his personal property to Burnette. Getchell breached the contract. The promisee made claim for $2,500 as the value of his services, which services were the consideration for the contract. The county court allowed the claim and the executor appealed. We said (p. 647), "It may well be that the court *should have awarded specific performance instead of a money judgment.*" (Our italics.) But, in affirming, we said that if the estate is less than $2,500 claimant will get it all and if the estate is valued at more than $2,500 the judgment should stand because the claimant did not appeal.

In *Estate of Jacobus* (1934), 214 Wis. 143, 252 N. W. 583, the case is complicated by the promisor's incompetency after making the promise but we recognized that there was a contract to leave the promisor's property to the promisee and we said that in this case it really makes no substantial difference whether specific performance is granted or that compensation and damages for the breach be awarded.

In *Estate of Soles* (1934), 215 Wis. 129, 253 N. W. 801, the promisor agreed that if the promisee would perform certain services the former would leave her entire net estate to the promisee. The promisee performed but the promisor did not keep the promise. We held that the promise was enforceable according to its terms and the promisee's claim was allowed at the value of the net estate.

57 Am. Jur., Wills, p. 166, sec. 189, finds:

"There is a conflict of opinion in reference to the measure of damages recoverable for breach of a contract to devise specific property in consideration of services. The majority rule is that the measure of damages is the value of property promised to be bequeathed or devised, regardless of the value of the services."

We conclude, then, that when the consideration is received by the promisor simultaneously with the promise to

compensate by a legacy or the consideration is given or performed after the making of the promise and in reliance upon the promise, this court has enforced the promise according to its terms. That is what the county court did in its judgment from which this appeal is taken. The trial court applied the correct measure of damages, namely the allowance of the claim of Miss Kurz to the entire net estate according to the terms of the agreement of 1940.

Respondent submits to us that the appellant should not be allowed costs and attorney's fees in prosecuting this appeal. Costs in this court by rule go to the party prevailing on the appeal. We find no occasion to anticipate or to direct the action of the trial court in respect to the administrator's costs in the trial court.

*By the Court.*—Judgment affirmed.