PEDERSON and others, Appellants, v. FIRST NATIONAL BANK OF SUPERIOR, Executor, and others, Respondents.

*June 9—July 1, 1966.*

649

For the appellants there were briefs and oral argument by *Daniel I. D'Amico* of Cumberland.

For the respondents there was a brief by *George W. Peterson* of Balsam Lake, for Estelle Rasmussen; *E. Nelton* of Balsam Lake, for the First National Bank of Superior; and *L. G. Nagler* of Balsam Lake, guardian *ad litem* for minor heirs, and oral argument by *Mr. Peterson* and *Mr. Nagler*.

HEFFERNAN, J. The facts are substantially undisputed. It appears that Anton and Bertha Laursen were

in their mid-eighties in 1956 when they requested Attorney D. E. Jensen to prepare wills. Discussions between the Laursens and Attorney Jensen led to the preparation of wills and an agreement which purported to limit the right of the parties to alter these wills. The general effect of the 1956 testamentary transaction was the execution of separate wills that were mutual and reciprocal and identical in that they bequeathed all of the property of each to the surviving spouse and provided, in the event of the predecease of the other spouse, that the residue would go to an agreed and identical group of beneficiaries.

Sometime prior to these proceedings, the 1956 agreement was misplaced or lost.

In 1957, at the request of Mr. and Mrs. Laursen, Attorney Jensen prepared new wills, and on August 21st of that year they were executed. These wills also were reciprocal and mutual and, although not exactly identical to each other, they in general carried out the scheme of distribution set forth in the wills of 1956, that is, the whole of the estate was to be given to the surviving spouse and, in the event the other spouse did not survive, distribution was to be made to blood relatives in the families of both husband and wife. At the time these wills were executed, Mr. Laursen, in the presence of Attorney Jensen, stated that the 1956 agreement should stand for these wills also. Before trial, Jensen did not recall the exact manner in which the parties referred to the 1956 agreement but in a deposition taken in December of 1964 stated that the parties merely said, "shall we leave it this way?" It is not clear from the record whether the parties were referring to the 1956 agreement or whether this was an expression of satisfaction with the 1957 wills prepared by Mr. Jensen.

After the death of Mr. Laursen in 1958, Mrs. Laursen prepared other wills, the first of which was similar to the wills drawn earlier. However, in 1961, she executed a will which is substantially different from the earlier versions. It eliminated all the blood relatives of Anton

Laursen as beneficiaries and made numerous other changes. This will was admitted to probate in the county court of Polk county. This 1961 will is the one that the appellants claim is violative of the earlier contractual agreement.

Subsequent to the commencement of this litigation, Attorney Jensen testified in regard to the contents of the agreement which was executed contemporaneously with the execution of the 1956 wills. There was no doubt that an agreement was entered into between the Laursens in 1956 and the trial court so found, nor have the respondents contended that such an agreement did not exist. The only question concerning the document is its contents and the legal effect to be attributed to it in view of the circumstances. In a deposition given before trial, Attorney Jensen stated that, although he did not recall the specific wording, the wills were to be of a contractual nature and were not to be changed. At the time of trial, Attorney Jensen, although not claiming to know the exact wording of the instrument that he drafted, stated that the contents of the agreement were substantially as follows:

"Whereas the parties have made and executed mutual Wills and whereas they intend them to be of contractual nature, it is hereby agreed by and between the parties hereto that these Wills will not be changed unless it is mutually agreeable to each party."

One of the persons concerned with the 1956 wills was H. H. Lindgren, a banking associate of Mr. Laursen. The 1956 wills provided that Mr. Lindgren could purchase Mr. Laursen's stock of the local bank at a stipulated price. Mr. Lindgren testified that Mr. Laursen showed him the 1956 wills and the accompanying agreement, which provided: "Those wills were not to be changed without mutual consent."

The trial court, though conceding that this testimony sufficiently proved the existence of the 1956 agreement,

concluded that the contents were not established by the proper quantum of proof. This court has held that, "the contents of a lost instrument must be shown with particularity by strong and convincing evidence." *Bohnert v. Radke* (1926), 189 Wis. 203, 206, 207 N. W. 284; *Heath v. Cuppel* (1916), 163 Wis. 62, 67, 157 N. W. 527. See also 54 C. J. S., Lost Instruments, p. 814, sec. 13e.

In connection with contracts to make a will, we have imposed a similar requirement of proof. As we stated in *Estate of McLean* (1935), 219 Wis. 222, 227, 262 N. W. 707:

"The rule is that such contracts must be established, not only by a preponderance of the evidence, but by evidence that is clear and convincing. A mere preponderance of the evidence will not support such a contract. Such a contract must be definite enough in its terms to permit a specific performance or to indicate the damages to be allowed for its breach."

We conclude that the trial judge was in error in finding that the evidence was not sufficiently clear and convincing to establish the contents of the lost agreement. We note in the first place that Attorney Jensen's testimony left no doubt of the purport of the 1956 agreement. Although his testimony at times varied slightly, there was absolutely no question that the expressed intent of the agreement was to make the wills contractual. Mr. Lindgren also corroborated the contents of that agreement and stated that the wills "were not to be changed without mutual consent."

Under these circumstances and in the absence of any evidence to the contrary, we must conclude that the contents of the instrument were proved by clear and convincing evidence. The finding of the trial judge that there was not the proper quantum of evidence is against the great weight and clear preponderance of the evidence and in fact is without any evidentiary basis for support. While in the ordinary case it would be within the power of a trial judge to disregard evidence when he considers

it inherently incredible, yet the entire tenor of the record and of the trial judge's memorandum decision makes it clear that he had no doubt of the credibility of Attorney Jensen's statements, but rather that he concluded that, as a matter of law, the statements were too vague and indefinite to establish the contents of the contract. This court is not bound by a finding of a trial court based upon undisputed evidence when that finding is in the nature of a conclusion of law. *Vogt, Inc., v. International Brotherhood* (1955–1956), 270 Wis. 315, 321i, 71 N. W. (2d) 359, 74 N. W. (2d) 749.

We conclude that the facts as testified to by Mr. Jensen were sufficient to establish that the wills of 1956 were contractual and were not to be changed without mutual consent.

Even though it is determined by this court that the evidence was sufficient to establish the contents of the 1956 contract, the question remains of the applicability of that contract to the 1957 wills. The respondents took the position that whatever might have been the effect of the 1956 contract in relation to the 1956 wills, that that contract was a nullity in relation to the 1957 wills unless there were a legally sufficient reaffirmation. The trial court in its memorandum decision arrived at a similar conclusion, reasoning that the 1956 agreement, if there were one, was revoked by the execution of the wills of 1957 and only by a reaffirmation in 1957 would the agreement be relevant. We cannot agree with this conclusion. If a reaffirmation were necessary, that reaffirmation is amply supported by the statements of Mr. Laursen on August 21, 1957, when he stated to his wife in the presence of Attorney Jensen that the 1956 agreement should stand for these wills also. However, we cannot conclude that the 1956 agreement required reaffirmation. A contract to make a will or to enter into a mutually satisfactory disposition remains in effect until the contract is discharged by performance or until it is abandoned by

mutual consent or rescinded by agreement. 94 C. J. S., Wills, p. 876, sec. 117a. The agreement, as shown by the testimony of Attorney Jensen, was that "these Wills will not be changed unless it is mutually agreeable to each party." The conduct of Mr. and Mrs. Laursen in 1957 was the result of their mutual agreement to change their wills pursuant to the very terms of the contract and was not an agreement to rescind that contract. The plain meaning of the contract was that the wills could be changed at any time in a manner that might be mutually agreeable to the parties but could not otherwise be changed. The 1957 wills, although differing from each other in minor respects and slightly altering the terms of the 1956 wills, nevertheless continued the scheme of testamentary disposition that was envisaged at the earlier date. There is nothing in the record nor on the face of the wills themselves that in any way casts any doubt upon the continued viability of the 1956 contract.

We agree, of course, with the trial court's conclusion that the 1957 wills did not comply with sec. 238.19, Stats., which provides:

"No will shall be construed as contractual unless such fact affirmatively appears in express language on the face of the instrument. . . ."

However, as pointed out in the recent case of *Estate of Rogers* (1966), 30 Wis. (2d) 284, 291, 140 N. W. (2d) 273, this statute is not applicable where there is a separate contract involved. It would be fatal *if* the only evidence of an agreement were the wills themselves and those failed to expressly reveal their contractual nature.

We conclude, therefore, that the 1957 wills were mutual and contractual. Where wills are made in accordance with such an agreement, the agreement will be specifically enforced. *Doyle v. Fischer* (1924), 183 Wis. 599, 605, 198 N. W. 763, 33 A. L. R. 733; *Allen v. Ross* (1929), 199 Wis. 162, 164, 225 N. W. 831, 64 A. L. R. 180; *Estate*

*of Schefe* (1952), 261 Wis. 113, 119, 52 N. W. (2d) 375; *Schwartz v. Schwartz* (1956), 273 Wis. 404, 409, 78 N. W. (2d) 912. And though it is clear that the will of the survivor may be subsequently revoked or changed, the contract, after the death of the first party to the contract, is irrevocable and will be enforced in equity. *Doyle v. Fischer, supra,* 183 Wis. at 606; *Schwartz v. Schwartz, supra,* 273 Wis. at 409.

We conclude that the agreement between Mr. and Mrs. Laursen should be enforced. It is apparent from the testimony that the wills of 1957 were the last wills of the parties that were executed by mutual consent in accordance with the terms of the 1956 agreement, and the contract must be enforced in accordance with the understanding of the parties as set forth in Mrs. Laursen's will of that date.

*By the Court.*—Judgment reversed, with directions to enter judgment for the plaintiffs consistent with this opinion.