DOYLE, Respondent, vs. FISCHER, Executor, and others, Appellants.

*April 9—May 6, 1924.*

*Wills: Husband and wife: Agreement to make mutual and reciprocal wills: Revocation: Evidence: Sufficiency: Specific performance: Who may bring action: Legatees of original devisee.*

1. Where two persons, and especially a husband and wife, agree to make mutual and reciprocal wills disposing of their separate estates, and wills are made in accordance with the agreement, and, after the death of one party, the other takes under the will and accepts the benefits of the agreement, equity will enforce specific performance of said oral agreement and prevent fraud. p. 605.

2. It is the contract and not the will which is irrevocable; and while the will may be revoked the contract stands and will be enforced by equity if it is a valid contract and enforcement is necessary to prevent fraud. p. 606.

3. The facts that the wills of a husband and wife constituted but a single document, that they were executed at the same time, that each testator knew of the provisions of the other's will,

that some of the children were provided for, by one and the others by the other testator, conclusively indicate that the two wills resulted from mutual agreement and were in accordance with the prior agreement.   p. 608.

4. It has been frequently held that a pre-existing contract to make mutual and reciprocal wills may be inferred from the wills themselves (especially if they be joint) in the light of circumstances existing at the time the wills were executed. p. 607.

5. Although the oral agreement to make mutual wills was void under the statute of frauds (sec. 2305, Stats.) so far as it related to real estate, where there had been a part performance thereof equity will enforce its complete performance. p. 608.

6. Where a husband and wife made mutual wills, and by the wife's will certain land was bequeathed to a son, James, and after the death of the husband the wife bequeathed the same land to others, and James, now deceased, had by his will given plaintiff a legacy and made a charitable institution residuary legatee, plaintiff, who was also assignee of the interest of the charitable institution, could prosecute an action for the specific performance of the contract to make mutual wills, he having become vested with the same rights of action that James, the original devisee, would have had if living.  p. 609.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed:*

During their lifetime Garret Doyle and Bridget Doyle, his wife, lived on a farm in Sheboygan county. On October 10, 1899, they had five children. Two, *Mary Fischer* (née Doyle) and *Margaret Ogle* (née Doyle), were married and living with their husbands. The others, *Elizabeth, James,* and *Garret,* were then unmarried and were living with their parents on their farm, and their ages were then, respectively, forty-two, thirty-seven, and twenty-five years. The parents owned 230 acres of land. One hundred and twenty acres thereof constituted the original and home farm, eighty acres of which was owned by Mrs. Doyle and forty acres by the husband. One hundred and ten acres of said land was purchased in the year 1887. While this was contiguous to the home farm, it really constituted a farm in

itself. The title to this farm was taken in the name of Garret Doyle, the husband.

On the 10th day of October, 1899, Garret and Bridget Doyle, his wife, executed a joint will. The introductory clause of that will is in the following language:

"We, Garret Doyle and Bridget Doyle, husband and wife, being of full age, possessing separate property and estate, desiring of making final disposition of our said separate property and estate while yet we possess the conscious knowledge and ability so to do, do make, publish, and declare the following to be our joint and several wills."

Then follows the will of Bridget Doyle, in which she devises to her husband, should he survive, a life estate in her real estate, consisting of the two forties above mentioned, the remainder over to her son, James Doyle, charging said James, however, with the payment of $2,000 to *Elizabeth Doyle,* which amount was made a specific lien upon the real estate until fully paid. Her son James was nominated executor of her will. Then follows the will of Garret Doyle, in which he devises to his son James the forty which he owned, and which constituted a part of the home farm, subject to a life estate in his wife should she survive him. He then devised to *Garret Doyle* the 110 acres purchased in 1887, subject to a life estate in his wife, Bridget Doyle, should she survive him, charged with the payment of the following legacies which were made specific liens upon said real estate: To *Mary Fischer* (née Doyle) $500; to *Margaret Ogle* (née Doyle) $500; and to *Elizabeth Doyle* $600. He also gave to his wife, should she survive him, all of his personal property of every kind, nature, and description as her own separate property, and if she did not survive him then his personal property was to go to his sons James and *Garret* in equal shares. The will contained this clause:

"The $600 herein bequeathed to my beloved daughter, *Elizabeth Doyle,* is bequeathed to her and for the reason and purpose now stated, she having purchased a piano at an

expense of $400, which was given to my daughter *Mary*, that sum is here given to her to reimburse her therefor, and the sum of $200 is given and bequeathed her with the special admonition, request, and direction that the same be expended in the celebration of masses for the repose of my soul and the soul of my beloved wife, Bridget Doyle."

He nominated his son *Garret Doyle* as executor of his will. Then followed the signatures of both testators and joint attestation clauses.

Garret Doyle, Sr., died on June 2, 1902, predeceasing his wife, who died February 9, 1917. After his death the contents of his will became known to the children, although the same was not admitted to probate until the 4th day of March, 1918. The court found that

"Soon after the death of Garret Doyle, senior, and when the contents of his will had become known to his children, his widow, Bridget Doyle, took possession of all of the personal property which was left by him, assuming the right to do so under and pursuant to the bequest thereof made to her in and by his will. At the same time, and because of his devise to her of a life estate in the land of which he died seized, his widow assumed as such devisee to accept, and did accept and received, the benefit of that devise; and from the time of her husband's death until September 10, 1904, her son James worked and managed the entire farm for her, and she had the possession and occupancy of the same. At the date last mentioned she sold said personal property to James for the sum of $1,500, and she then leased to him her own land, together with the land in which her husband's will gave her the life estate."

On September 10, 1910, Bridget Doyle purchased from her son *Garret Doyle* the real estate devised to him by his father's will, and on the 17th day of September, 1910, conveyed the same to her daughter *Elizabeth*. On the 10th day of July, 1910, Bridget executed another will, in which she devised the two forties, which by her first will she had devised to James, to her three daughters, giving to James,

however, a life estate in one forty. She also gave to her three daughters the residue of her estate. In and by the terms of the latter will she specifically revoked the will of October 10, 1899. After her death, on February 9, 1917, her will of July 10, 1910, was established as her last will and testament and admitted to probate. It will be noted that her last will, if it be effective, operates to revoke the devise to James in fee of the eighty acres of land which she made to him in her former will, and gives to James a life estate in only one forty.

James Doyle executed his last will and testament on April 13, 1918. He died on April 16, 1920. By his will he gave to his sister *Margaret Ogle,* $1,000; to his sister *Mary Fischer,* $1; and to his sister *Elizabeth Doyle,* $1. He gave to his brother, *Garret Doyle,* $1,000, and the income from what is left of the estate after paying preceding legacies. To his niece, *Ellen Ogle,* he gave $1,000 after the death of *Garret.* He gave the residue of his estate to the House of the Good Shepherd of Denver, Colorado. His will was duly admitted to probate. Subsequent thereto the House of the Good Shepherd, for a valuable consideration, executed to the plaintiff, *Garret Doyle,* a deed conveying its title and interest in the forty acres which James acquired through his father's will, and also, for a valuable consideration, executed an assignment of all its right and interest, as residuary legatee and otherwise, under said will of James Doyle.

This action is brought by *Garret Doyle* against the executor and beneficiaries under the will of Bridget Doyle and against the administrator with the will annexed of the estate of James Doyle, and in effect demands judgment for the specific performance of an alleged oral contract, pursuant to which the joint and mutual wills of Garret and Bridget Doyle were executed, and that the lands be decreed to descend in accordance with the terms of said joint will, and that they be impressed with a trust in favor of the bene-

ficiaries of said joint will, and for other appropriate relief to accomplish that purpose.

The case was tried before the court, which found the facts already stated and, in addition thereto, that the said joint will executed by said Garret Doyle and his wife, Bridget Doyle, on the 10th day of October, 1899, was made and executed by them and by each of them pursuant to and for the purpose of giving effect to an oral contract or agreement which they had theretofore made with each other to finally and irrevocably dispose of their separate estates by making their joint, mutual, and reciprocal will, and that said will does contain, in tenor and substance, such terms and provisions as are essential and adequate to effectuate and carry out the aforesaid oral contract or agreement; that no notice was given by Bridget Doyle to her husband, Garret Doyle, in his lifetime, of any purpose or intention on her part to revoke or change in any respect the terms of their joint will affecting their said property; that when James Doyle, soon after his father's death, learned of the contents of said joint will, he thenceforth relied thereon, and because of his expectations that he would come into possession of said property through said will he continued to work upon and manage the farm up to the time of his mother's death and made extensive improvements thereon, and that prior to the death of his mother he had no notice or information that she did not intend to abide by and effectuate on her part the provisions of said joint will nor that she had made any later will.

As conclusions of law the court found that the will of October 10, 1899, is the joint, mutual, and reciprocal will of the makers thereof; that after the death of the husband, Garret Doyle, and the acceptance and receipt by his widow, Bridget Doyle, of the benefit of the provisions therein made for her, she thereupon became bound by the contract pursuant to which the will was made, and that she could not thereafter abrogate or nullify that contract, nor dispose of her property in violation thereof, by any later will, and that

Doyle v. Fischer, 183 Wis. 599.

her will of July 10, 1910, is ineffectual to make any disposition of her property which differs from or violates the provisions of that contract and of the said joint will of October 10, 1899, and that the plaintiff is entitled to judgment for the specific enforcement of said contract. From the judgment entered pursuant to said findings and conclusions, all of the defendants except the administrator of the estate of James Doyle bring this appeal.

For the appellants there was a brief by *M. C. Mead* of Plymouth and *A. C. Prescott* of Sheboygan, and oral argument by *Mr. Prescott*.

For the respondent there was a brief by *Reilly & O'Brien* of Fond du Lac, and oral argument by *J. E. O'Brien*.

OWEN, J. The principal question of law involved upon this appeal may be stated thus: Where an agreement is entered into by two persons, and especially by husband and wife, to make mutual and reciprocal wills disposing of their separate estates pursuant to their mutual agreement, and where mutual and reciprocal wills are made in accordance with that agreement, and where, after the death of one of the agreeing parties, the other takes under the will and accepts the benefits of said agreement, equity will enforce specific performance of said oral agreement and prevent the perpetration of fraud which would result from a breach of the agreement on the part of the one accepting the benefits thereof. *Allen v. Boomer,* 82 Wis. 364, 52 N. W. 426; *Frazier v. Patterson,* 243 Ill. 80, 90 N. E. 216, 27 L. R. A. N. S. 509; *Rastetter v. Hoenninger,* 214 N. Y. 66, 108 N. E. 210; *Morgan v. Sanborn,* 225 N. Y. 454, 122 N. E. 696; *Edson v. Parsons,* 155 N. Y. 555, 50 N. E. 265; *Baker v. Syfritt,* 147 Iowa, 49, 125 N. W. 998; *Torgerson v. Hague,* 34 N. Dak. 646, 159 N. W. 6; *Bower v. Daniel,* 198 Mo. 289, 95 S. W. 347; *Campbell v. Dunkelberger,* 172 Iowa, 385, 153 N. W. 56; *Carmichael v. Carmichael,* 72 Mich. 76, 40 N. W. 173; *Larrabee v. Porter* (Tex.) 166 S. W. 395;

*Stewart v. Todd,* 190 Iowa, 283, 173 N. W. 619, 180 N. W. 146; *Hermann v. Ludwig,* 186 App. Div. 287, 174 N. Y. Supp. 469; 1 Redfield, Wills ·(4th ed.) 182, 183. It should be borne in mind that it is the contract and not the will that is irrevocable. The authorities generally hold that the will may be revoked, but the contract stands and will be enforced by equity if it be a valid contract and such enforcement is necessary for the prevention of fraud.

In this case it conclusively appears that Bridget and Garret Doyle made not only mutual and reciprocal but joint wills, and that, after the death of Garret, Bridget accepted and received the benefit of the provisions of his will made in her behalf.

None of the foregoing propositions, either of fact or law, are seriously contested by the appellants. They claim, however, that there is no evidence that the joint and mutual wills were made pursuant to an agreement between the parties. It does not appear that there was any written agreement between the parties prior to the execution of their wills, and it must be presumed that such agreement, if it existed, rested in parol. While *Garret Doyle* testified that such an agreement was discussed in the family, *Elizabeth Doyle,* who was a member of the family at the same time, testified to the contrary, and the trial court expressed the opinion that, even though their evidence be competent, the testimony of *Garret* was offset by that of *Elizabeth,* and the testimony of *Garret* contributed nothing to the establishment of such a parol agreement. The trial court held, however, that the provisions of the wills themselves, in the light of the facts and circumstances existing at the time the wills were made, conclusively indicated a prior agreement between the husband and wife to make such wills. The views of the trial judge with reference to this question are thus expressed in his opinion which we find in the record:

"The provisions of the joint will show that the makers thereof intended to make, as the will says, a 'final' dispo-

sition of all their property. In that will the wife gave all her land to her son James and $2,000 to *Elizabeth*, and left nothing to either of her other three children. The father gave only $600 to *Elizabeth*, who had taken care of him and given him her earnings, and that sum merely reimbursed her for the $400 which she had paid out for one of her sisters, and placed in her hands a further sum of $200 which she was to pay for religious services for her parents. Her father gave $500 as a gift to each of his other daughters. He gave 110 acres to *Garret* and only forty acres to James. But that forty, together with the eighty which the mother gave to James by the joint will, was to give him a farm of 120 acres, or ten acres more than his brother *Garret* was to get. The division of the entire property made by the joint will shows clearly to my mind that its makers had agreed how the distribution should be made, and that neither of them would have disposed of his or her separate property just as the joint will does dispose of it if there had not been a contract or agreement between them to that effect. In the absence of such a contract it is quite improbable that the mother would have bequeathed in that will $2,000 to *Elizabeth* and nothing whatever to her other daughters; or that she would have devised her entire eighty acres of land to one son and none of it to her other son. If there had been no such contract, the father would certainly have made a more liberal provision for *Elizabeth* out of his own estate than he did make for her; and he would not have then devised 110 acres to *Garret* and only forty acres to James, who attended to his father's affairs and lived with him until he died."

Courts have frequently held that a pre-existing contract to make mutual and reciprocal wills may be conclusively inferred from the provisions of the wills themselves (especially if they be joint) in the light of circumstances existing at the time the wills were executed. *Frazier v. Patterson*, 243 Ill. 80, 90 N. E. 216; *Hermann v. Ludwig*, 186 App. Div. 287, 174 N. Y. Supp. 469; *Carmichael v. Carmichael*, 72 Mich. 76, 40 N. W. 173; *Bower v. Daniel*, 198 Mo. 289, 95 S. W. 347; *Campbell v. Dunkelberger*, 172 Iowa, 385, 153 N. W. 56; *Larrabee v. Porter* (Tex.) 166 S. W. 395.

The case of *Edson v. Parsons,* 155 N. Y. 555, 50 N. E. 265, relied upon by appellants, is not to the contrary. In that case the wills under consideration were not joint, and the lower court failed to find that the separate wills of the two sisters, made at about the same time, wherein each devised her property to the other, were made pursuant to a prior agreement. The appellate court simply refused to disturb this finding of the lower court. Commenting upon that case in *Rastetter v. Hoenninger,* 214 N. Y. 66, at p. 73 (108 N. E. 210), the same court said:

"In that case the trial court found from the wills themselves and the extrinsic circumstances that there was no contract, and this court held that there was evidence to justify that finding, which was far from holding that even in that case there was no evidence to sustain a contrary finding."

We agree with the finding of the trial court in this respect. The fact that these wills constitute but a single document, that they were executed at the same time, that each of the testators knew of the provisions made in the will of the other, that some of the children were provided for by one, and the others by the other, testator, conclusively indicates that the two wills resulted from a mutual agreement between the testators and that their provisions were in accordance with such prior agreement.

It seems scarcely necessary to say that even though the agreement rested in parol and was void under the statute of frauds so far as it related to the real estate, there has been such a part performance thereof that equity will enforce its complete performance. Sec. 2305, Stats.; *Papenthien v. Coerper,* 184 Wis. ——, 198 N. W. 391; *Carmichael v. Carmichael,* 72 Mich. 76, 40 N. W. 173; *Morgan v. Sanborn,* 225 N. Y. 454, 122 N. E. 696.

Appellants suggest that the right to specific performance rests largely in the discretion of the court and will not be decreed when for any reason it would be inequitable. *Stack v. Hickey,* 151 Wis. 347, 138 N. W. 1011. They refer to

certain conduct on the part of James subsequent to the death of the father which they claim should deny him the favorable consideration of a court of equity. It is unnecessary to detail the circumstances upon which they rely for this contention. It is sufficient to say that they have received thorough consideration and we do not deem them sufficient to justify a denial of specific performance of the contract.

Neither can we sustain the contention of the appellants that the plaintiff is without a sufficient interest to prosecute this action. His interest as legatee under the will of James and as assignee of the House of the Good Shepherd completely vests him with the same interest James would have had if living. That the action in favor of James survived, is not disputed. If so, it vested in the plaintiff and in the House of the Good Shepherd, as legatee under his will, and the assignment of all its interest under the will of James by the House of the Good Shepherd to the plaintiff operates to vest the plaintiff with the same right of action that James would have had if living.

We can see little difference in principle between this case and that of *Allen v. Boomer,* 82 Wis. 364, 52 N. W. 426, and the judgment entered herein is fully supported by the doctrine of that case.

*By the Court.*—Judgment affirmed.