ESTATE OF DOYLE.

*April 9—May 6, 1924.*

*Executors and administrators: Claims against decedents: Declarations of intention to make a gift: Members of one family: Implied agreement to pay rent.*

1. Evidence that decedent sold claimant, his sister, a cow which it is claimed died by reason of infirmities existing at the time of the sale, and that later deceased said he would give claimant a cow or $200, is insufficient to sustain a claim against

his estate in the absence of anything establishing a liability on the part of the deceased, the statement made by him, at best, amounting only to a mere declaration of intention. p. 611.

2. Where deceased was in fact the equitable owner of certain lands, the executor of the will of his mother had no claim against deceased for the use and occupation of the lands. p. 611.

3. A son, James, had been the active manager and in control of a farm owned by his father, who by will devised it to another son, Garret, subject to a life estate in testator's wife. The latter became the owner in fee and transferred title to a daughter, Elizabeth, who with her mother and brother lived as a member of the family—doing housework, and receiving considerable sums of money from James. James did not know Elizabeth owned the farm, and nothing was said about compensation of any kind. *Held,* that the situation is analogous to that where compensation is claimed by one member of a family for services rendered the family, and, in the absence of an agreement, the relation of landlord and tenant did not exist between Elizabeth and James, and Elizabeth had no claim against the estate of James for rent of the farm. p. 614.

APPEAL from a judgment of the county court of Sheboygan county: PAUL T. KREZ, Judge. *Reversed.*

Three separate claims against the estate of James Doyle, deceased, were allowed by the county court, and from the judgment allowing the claims *Garret Doyle,* one of the legatees, appeals.

For the appellant there was a brief by *Riley & O'Brien* of Fond du Lac, and oral argument by *J. E. O'Brien.*

*A. C. Prescott* of Sheboygan, for the respondents.

### *Claim Number I.*

ROSENBERRY, J. The first claim was that of *Mary Fischer* against the estate of James Doyle for the value of a cow sold by James Doyle during his lifetime to his sister, *Mrs. Fischer,* who resided in North Dakota. It was claimed that the cow died by reason of infirmities which existed at the time of her sale. The only evidence given in support of this claim was that of *Elizabeth Doyle,* a sister of the claim-

ant and of the deceased.   She knew nothing whatever in regard to the facts concerning the cow's death except what she had been told by her sister, and the claim seems to have been allowed because *Elizabeth* testified that her brother had said, when she had remonstrated with him about the sale of the cow to *Mrs. Fischer,* that he would give her a cow or $200.   In the absence of anything to establish a liability on the part of James to the claimant, this evidence at best amounts to a mere declaration of intention and is totally insufficient to support a judgment for the amount of the claim.   There is no competent evidence in the case which establishes any liability on the part of the deceased to the claimant.   The claim was therefore improperly allowed.

### Claim Number II.

The second claim against the estate of James Doyle was made by *C. G. Fischer,* executor of the will of Bridget Doyle, deceased, for the use and occupation of certain lands.   This claim was allowed at the sum of $688.64.   It was contended by the claimant that the deceased, James Doyle, occupied the northeast quarter of the southwest quarter and the southwest quarter of the southwest quarter of section one, in the town of Sherman.   The facts in relation to this transaction are fully set out in the case of *Doyle v. Fischer,* decided herewith (*ante,* p. 599, 198 N. W. 763).   It having been held by the circuit court for Sheboygan county that the deceased, James Doyle, was the equitable owner of the premises under the will of his father, there remains no basis for the claim of the executor against the estate of James Doyle inasmuch as the lands upon which the claim was based are adjudged to be the property of James Doyle and not of his mother, Bridget Doyle.

### Claim Number III.

This claim was filed by *Elizabeth Doyle* and consisted of five items.   The first item of the claim was for the rent of 110 acres of property known as the Scanlan farm, situated

in sections eleven and twelve of the town of Sherman. The second and third items were for personal services rendered by *Elizabeth Doyle* to James Doyle as housekeeper. These were disallowed by the trial court and are not in controversy here. The fourth item was for the rental of the southwest quarter of the southwest quarter of section one, being forty acres known as the Sheridan forty. The court allowed for the rental of the Scanlan farm $1,420.32 and for the rental of the Sheridan forty $774.72. The appeal from the judgment raises the question of the sufficiency of the evidence to sustain the allowance for these two items.

Inasmuch as by virtue of the judgment in the case of *Doyle v. Fischer* title to the Sheridan forty has been adjudged to be in James Doyle, the claim of *Elizabeth Doyle* for rental therefor fails, and for that reason so much of the judgment as allows $774.72 is erroneous. The claim for the rental of the Scanlan farm rests upon the following facts: by virtue of the will of Garret Doyle, husband of Bridget Doyle, the title to the Scanlan farm was vested in *Garret Doyle, Jr.,* subject to a life estate in Bridget Doyle, his mother. The will was made in 1899. James Doyle thereupon entered upon the working of all of the land and continued to work it up to the time of his death in 1920. The elder Garret Doyle died in 1902. His will was not probated. The widow, Bridget Doyle, accepted the provisions of the will, took over all of the personal property, afterward sold it to her son James, and on September 10, 1910, *Garret Doyle, Jr.,* conveyed the Scanlan farm to his mother, Bridget Doyle, and on September 17, 1910, Bridget Doyle, the mother, conveyed the same to *Elizabeth Doyle,* the claimant. There was no change in the relationship of the parties from the time of the death of the elder Garret Doyle down to the time of the mother's death. Bridget Doyle, James Doyle, the deceased, and *Elizabeth Doyle* continued to live as the members of one family,—James did the work upon the land, harvested the crops, took care of the stock;

*Elizabeth* did the housework for her mother and brother,— and nothing was said between the parties as to compensation either for services or for land. James Doyle apparently considered himself the owner of the land situated in section one, cultivated the Scanlan farm in which his mother had a life estate, and there appears to have been no accounting between the parties or any understanding or agreement between any of the members of the family as to compensation of any kind. There is nothing to show that James Doyle had any knowledge or information that his mother, Bridget Doyle, had conveyed the Scanlan farm to the claimant, *Elizabeth Doyle.*

The question presented is, Will the law, under such circumstances, imply an agreement on the part of James Doyle to pay *Elizabeth Doyle* the rental value of the land occupied and used by him? Prior to the death of the father in 1902, James had been in the active management and control of the entire farm. He no doubt considered himself in practical effect the owner of the three forties in section one. He knew that under the will of his father his mother had a life estate in the Scanlan farm. There is nothing to show that he knew that *Elizabeth Doyle* had become the owner of these premises by virtue of a deed to her from her mother. While it is true, as the head of the family, he took the proceeds derived from the joint efforts of the family, it appears by the claim allowed that considerable sums were paid in the shape of notes by James to *Elizabeth:* February 1, 1916, he gave her a note for $450; February 9, 1916, a note for $500; and March 10, 1916, another note for $500. He also assigned to her a note by one Fischer to the amount of $1,200. It is claimed that these were payments upon account of rent. There is nothing to show, however, upon what account they were paid. It is quite as probable that they were a partial division of the proceeds of the family enterprise rather than rent. There is certainly nothing to show that James Doyle ever intended to acknowledge himself in-

debted to *Elizabeth* or any one else on account of the rent for the Scanlan farm. The situation is quite analogous to that where compensation is claimed by one member of a family for services rendered to the family, and in the absence of any evidence tending to establish an agreement on the part of James Doyle there is nothing to show that the relation of landlord and tenant ever existed between *Elizabeth Doyle* and her brother James. If it was her purpose and intention to claim from James rental for the Scanlan farm, she should have declared her intention and not withheld from him knowledge that she was the owner; and even if he knew she was the owner she should have indicated her expectation that he was to pay rental for the use of the premises. Under such circumstances the law will not imply a promise. *Collyer v. Collyer,* 113 N. Y. 442, 21 N. E. 114; *Crodle v. Dodge,* 99 Wash. 121, 168 Pac. 986. So much of the judgment, therefore, as allows the claim of *Elizabeth Doyle* for rental of the Scanlan farm is erroneous.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.