ANDREWS, Judge.
This is an appeal from a final decree in an action by Russell Sawyer for specific performance of an alleged contract to make a will evidenced by mutual or reciprocal wills executed by Lucy H. Sawyer and Herbert E. Sawyer, her husband, while they were residents of Wisconsin.
The will of Herbert E. Sawyer was dated August 27, 1949, and a will of Lucy H. Sawyer was dated October 4, 1949. Both parties executed a codicil to said wills on September 25, 1950, and thereby republished both wills.
Herbert E. Sawyer died on December 28, 1952, and his will was probated in the County Judge’s Court of Broward County. Lucy Sawyer survived and executed a new will dated February 17, 1955, revoking the will dated September 25, 1950 and codicil dated October 4, 1949.
Lucy Sawyer died in Broward County on February 5, 1963, and her will of February 17, 1955 and a codicil dated March 14, 1960 were admitted to probate.
By stipulation of the parties the wills and codicils of Herbert E. Sawyer and Lucy H. Sawyer constituted the only evidence before the court. The question thus presented was whether or not the execution of a will by Herbert E. Sawyer on August 27, 1949, the execution of a separate will by Lucy H. Sawyer on October 4, 1949, and the execution of codicils by both parties on September 25, 1950 were sufficient evidence of a contract between the parties which could be enforced against the survivor.
In order to properly consider the matter it is necessary that we set out in considerable detail provisions of the various wills and codicils.
The will of Herbert E. Sawyer dated August 27, 1949 directed all debts be paid; that all of his personal effects go to his wife, Lucy H. Sawyer, if she survived; otherwise equally to Russell E. Sawyer and Dorothy S. Inglis, to be divided between them as they chose; that his stamp collection go to his son, Russell E. Sawyer. Item Four made a five-thousand-dollar specific bequest to Dorothy S. Inglis, if surviving, otherwise to her issue. Item Five made a five-thousand-dollar specific bequest to Russell, if surviving, otherwise to Maxine Sawyer, wife of Russell, if Russell was deceased and Maxine survived and had not remarried. If Russell was deceased and Maxine was deceased or remarried, the bequest went to the adoptive son of Russell, Richard Sawyer. Item Six provided one thousand dollars as specific bequest to Edward S. Inglis, husband of Dorothy S. Inglis. By Item Eight the Kenosha, Wisconsin homestead was devised to his wife, Lucy, with a provision that if his wife predeceased him, the homestead was to be sold and the proceeds paid to his residuary estate. The Florida home was devised to Dorothy with a provision that if Dorothy predeceased him, it was to be sold and the proceeds paid to his residuary estate.
Item Ten created a trust of all the residue, the provisions and directions of which were as follows:
“(a) Usual trust powers to invest, reinvest, collect income.
“(b) All income to go to his widow, Lucy, with limited power of encroachment on principal, if necessary, having in mind her own estate.
“(c) On the death of his wife Lucy, the trust was to be divided into two shares; one for Russell, his son, and one for Dorothy, his daughter.
“With respect to the interest of Dorothy, income was to be paid to her with limited right to invade corpus for cause. Income was to go to Dorothy during her lifetime and on her death, *762 to her children, if they survived Dorothy, the mother; otherwise the income was to go to Russell or to Richard, the adoptive son of Russell, if Russell did not survive, or to the estate of Russell, and revert to his estate if neither Russell nor his son, Richard, survived.
“With respect to the share in trust of his son Russell, income was to be paid quarterly to Russell for a period of two years after the death of Lucy, at which time one-half of the principal was to be distributed to Russell and the balance held in trust during the life of Russell, with limited right of trustees to invade corpus.
“In the event that Russell died before the two-year period expired following the death of the mother Lucy, one-half of the trust share of Russell was to go to Dorothy. The other half was to remain in trust and the income was to go to Maxine Sawyer, wife of Russell, during her life or widowhood. On her death or remarriage, the one-half was to go to Richard, adoptive son of Russell, if living and twenty-five years of age. If he was living and under twenty-five years of age, it was to remain in trust until he reached twenty-five years of age.
“In the event Richard, son of Russell, died before the vesting of his interest, one-half was to go to his estate if he left a widow and/or children, and if Richard, the adopted son of Russell, leaves neither a widow nor children, the bequest was to lapse and go to the daughter Dorothy.
“The trust specifically provided that the bequests were not to be distributed until the beneficiaries reached the age of twenty-five years, with discretionary powers in the trustee to use the income and with limited right of invasion of corpus for the care, support, mainteance and education of the descendants of his son and daughter.
“There were directions to the trustee with respect to payment to the beneficiaries under twenty-five years of age who might be incapacitated, and spendthrift restrictions. It was also directed that undistributed income was to be paid to the persons entitled to the next successive interest in the proportion in which they take such interest.
“The trustee was permitted to make distribution in cash or kind.
“The discretionary powers and duties of the trustee with respect to investments, collecting and distributing income were defined, and the trustee was directed to render at least semi-annual accounts of income and disbursements to the adult income beneficiaries.”
The testator also designated his wife Lucy and such corporate trust company as she may select as executors, and nominated The Northern Trust Company, an Illinois corporation, of Chicago, Illinois, as trustee. If Lucy Sawyer predeceased the testator, his son Russell was designated executor and such trust company as he selected as executors.
The last will and testament of Lucy H. Sawyer executed by her on the 4th day of October, 1949, directed payment of debts, and devised her personal effects to her husband, Herbert E. Sawyer, if he survived; otherwise to Dorothy, her daughter, and Russell, her son, to be divided as they saw fit. Item Three was a specific bequest of ten thousand dollars to Dorothy, her daughter, if she survived; otherwise to her issue by right of representation. Item Four was a specific bequest of ten thousand dollars to Russell if he survived; otherwise to Maxine, wife of Russell, if she shall not be remarried, and if she had remarried, it was to go to their adoptive son Richard. Item Five was a one-thousand-dollar bequest to Maxine, wife of Russell, if she survived and had not remarried; otherwise the one thousand dollars was to revert to the residuary estate. Item Six was a cash bequest of one thousand dollars to Edward S. Inglis, hus *763 'band of Dorothy, provided he is the husband of her daughter at the time of her death, or if the daughter predeceased Lucy and he not be then remarried. In the event he remarried, the bequest was to lapse and become a part of the residuary estate. Item Seven provided first that if at the time of her death she was the owner of the homestead located at 6312 3rd Avenue, Kenosha, Wisconsin, it was to be sold and the proceeds paid to her residuary estate; and second, if at the time of her death she was the owner of premises located in Hollywood, Florida, or if she had acquired another Florida home or elsewhere, that real estate was to go to Dorothy if she survived, as her sole and absolute property; and third, if Dorothy predeceased her, then the devise of the winter home was void and the premises were to be sold and the proceeds become a part of the residuary estate.
Item Nine created a trust, the provisions of which were as follows:
“(a) Trustee was directed to take possession of, invest and reinvest and distribute income and corpus as directed.
“(t>) Directed payment of the income to her husband Herbert during his lifetime if he did not remarry, with limited power of encroachment against the corpus.
“(c) Directed disposition of the trust after the death or remarriage of her husband Herbert, and directed the trust be divided into two parts, one for Russell, her son, and one for Dorothy, her daughter.
“With respect to the Dorothy trust, income was to be paid to her or for her benefit, with limited power of encroachment for her ‘medical care, support, maintenance and welfare, taking into consideration all other income and cash resources available to her.’ Upon the death of Dorothy, her interest was to pass to her ‘living descendants,’ if any; otherwise be distributed to testatrix’ son Russell if he be living, free of trust, or to Richard, adoptive son of Russell, if he be then living; otherwise to her husband Herbert, even though he may have remarried, free and clear of trust; otherwise to the estate of her husband Herbert if Russell, her son, Richard, adoptive son of Russell, and Herbert, her husband, be not then living.
“The income from the trust for Russell was to be paid for a period of two years following the death or remarriage of Herbert, her husband, and at the expiration of two years, one-half was to be distributed to Russell, if living, and the other one-half to remain in trust with income payable in installments to Russell, with limited power of encroachment on corpus, during the life of Russell. In the event of the death of Russell after the expiration of two years, the balance of the share due him was to go to Dorothy, subject to the terms of the trust for her benefit.
“In the event of the death of Russell prior to the expiration of the two years following the death or remarriage of her husband, then the share of Russell was to be distributed as follows:
“One-half of such share was to remain in trust for Dorothy, subject to the trust in her favor and the other half was to remain in trust and the income paid to Maxine, wife of Russell, during her lifetime or until she remarried. Upon her death or remarriage, it was to remain in trust for Richard, adoptive son of Russell and Maxine, and be distributed to him upon his reaching twenty-five years of age.
“The share of Richard was to remain in trust until he was twenty-five years of age, at which time one-half of the corpus was to be distributed to him. If he did not survive the age of twenty-five years and left a wife and/or descendants, this one-half was to be distributed to his estate.
*764 “In the event that Richard did not survive and left no wife or descendants, the remaining one-half was to remain in trust for Dorothy, subject to the provisions of the trust in her behalf.
“The trust also contained the provisions that if a share becomes distributable to a descendant who has not reached twenty-five years of age, the share shall vest but remain in trust until the beneficiary reaches the age of twenty years.
“(d) Gives the trustee power to make payments directly to a beneficiary, a guardian, a relative or friend for the care, support, and education of the beneficiary or permits the trustee to use the amount directly for the beneficiary’s care, support and education.
“(e) Contained spendthrift trust restrictions.
“(f) Directed accrued or undistributed income be paid as income to the persons entitled to the next successive interest.
“(g) Directed the trustee with respect to discretion in distributing cash or kind.
“(h) Defined the powers, duties and discretions of the trustee.
“(i) Directed the trustee to account as to income and disbursements to adult beneficiaries.
“(j) Directed the trustee with respect to merger or transfer of assets from one corporation to another.
“(k) Permitted the majority in interest of adult beneficiaries to change the trustee, defines the rights and liabilities of the original or successor trustees.
“The trust contemplated the possible administration in a jurisdiction other than the state of Wisconsin and provided for the appointment of the trustee by the executor or trustee, and exempts either from necessity of furnishing bond.”
Her husband Herbert, and such corporate trust company as he may select are designated executors, and The Northern Trust Company, an Illinois corporation of Chicago, Illinois, as trustee. In the event that Herbert predeceased her, her son Russell and such trust company as he selects were to be executors and each were exempt from the requirement of bond.
Both Herbert E. Sawyer and Lucy H. Sawyer, husband and wife, executed codicils to their wills on the 25th day of September 1950, in the State of Wisconsin.
The codicil to the last will and testament of Herbert E. Sawyer revoked sub-paragraphs relating to disposition of Wisconsin and Florida real estate, and provided in lieu thereof, in tire event that Lucy H. Sawyer predeceased him that the real estate be sold and proceeds turned over to the residuary estate.
With respect to the codicil to the last will and testament of Lucy H. Sawyer, paragraphs relating to the Wisconsin and Florida real estate were revoked, and in, lieu thereof directed that the real estate be sold and the proceeds turned over to the residuary estate.
The will of Lucy H. Sawyer executed February 17, 1955 directed debts and funeral expenses be paid as well as inheritance taxes out of the estate. Item Three devised to Dorothy the Florida home located at 1235 Harrison Street, Hollywood, Florida, and if she survived, all articles of personal and domestic and household goods, furnishings, except flat silver. Item Five devised the flat silver to Russell E. Sawyer, her son. Specific bequest was made of one thousand dollars to Edward S. Inglis, husband of Dorothy, and one thousand dollars each was devised to Maxine, wife of Russell, and to Richard, adoptive son of Russell. Item Nine devised to Dorothy the sum of five *765 thousand dollars. Item Ten devised to Russell the sum of five thousand dollars.
By Item Eleven all the rest, residue and remainder was devised one-half to Dorothy, free and clear, if she he living at the time of the death of testator; one-half to Dorothy in trust under the following terms, trusts and conditions:
“(a) Created two trusts, 'A’ and ‘B’; Trust ‘A’ for the benefit of her grandson, Richard Inglis, and Trust ‘B’ for the benefit of granddaughter, Laura Susan Inglis.
“(b) With respect to the trust for the benefit of Richard Inglis, it provided that if either of the grandchildren beneficiaries under Trust ‘A’ or ‘B’ were not living at the time of the death of the testator, that the share of the descendant passed to the surviving brother or sister.
“(c) Directed that a trustee accumulate the income of Trusts ‘A’ and ‘B’ and pay out of Trust ‘A’ from time to time for the care, support, maintenance and education of Richard Inglis; with similar provisions with respect to the granddaughter, Laura Susan Inglis. Both beneficiaries are children of Dorothy Inglis and Edward Inglis. The Trust also contained the following direction :
“ 'My trustee shall in her sole discretion make such payments of income to the beneficiaries monthly, quarterly, semi-annually or annually and shall in her sole discretion * * *.
“ ‘ * * * My intention is not to provide for any specific distributions, but to leave the matter entirely in the discretion of my trustee to use and distribute so much of the principal of the trust estates hereby created for the benefit of each of said beneficiaries from time to time as my said trustee may deem necessary for such purposes.’
“(d) Said trust stated that said trust would terminate when each of the beneficiaries reached twenty-one years of age, with a provision that if either of said beneficiaries died prior to reaching age twenty-one, that portion, be distributed to the surviving beneficiary.
“(e) Said trust further provided that in the event that both grandchildren died prior to reaching age of twenty-one years, the accumulated income and corpus be distributed to her daughter (the trustee) Dorothy, if she be living at such time, and if she be not living, to her son Russell.
“(f) The trustee is given virtually absolute powers with respect to investments, exchange of property, to employ such agents, servants, counsels and associates as she desires, including reasonable annual compensation to the trustee or trustees for their services.
“By Article 12 she created spendthrift restrictions with respect to Trusts ‘A’ and ‘B’ for the children of trustee Dorothy Inglis.
“Article 13 directs that in the event her daughter should die prior to the termination of the trust or become incapacitated, that her son-in-law, Edward S. Inglis, be designated as trustee in lieu of and in substitution for or as successor to the said Dorothy S. In-glis.”
By Article 14, she designated Dorothy S. Inglis as executrix.
By Article IS, she directed that in the event of the death, inability, disability or refusal of her daughter Dorothy to act as executrix, her son-in-law, Edward S. In-glis, husband of Dorothy, be designated executor. Under this article she gave to her executrix or to her successor full and absolute power without court order to deal with the trust property.
*766 Lucy H. Sawyer executed a codicil on March 14, 1960. She deleted the bequest of the home in Hollywood and substituted a provision that all of her real estate which she might own would go to Dorothy S. Inglis, if she survived, and if not to the residue of the estate.
From these facts it appears that the will of Herbert E. Sawyer dated August 27, 1949 and the will of Lucy H. Sawyer dated October 4, 1949 were mutual or reciprocal even though not executed on the same date. The codicils executed by both testators on September 25, 1950 republished said Wills and established the dates thereof of both as September 25, 1950. In Re Noon’s Will, 1902, 115 Wis. 299, 91 N.W. 670.
The chancellor held that the mere fact that the two wills, although on their face indicated an intention of the parties to dispose of their separate and jointly-owned property in accordance with a plan for their children and grandchildren, that such fact standing alone and in the absence of a showing of other circumstances, the same did not constitute an enforceable contract to make a will.
In determining whether these documents are sufficient in and of themselves to show the existence of a contract, we must look to the law of Wisconsin. At the time of the execution of said wills, both Florida and Wisconsin recognized the validity of a contract to make a will. Doyle v. Fischer, 1924, 183 Wis. 599, 198 N.W. 763, 33 A.L.R. 733. Keith v. Culp, Fla.App. 1959, 111 So.2d 278. Both Florida and Wisconsin, however, adopted laws in 1957 modifying this rule. In Florida it was provided that agreements to make a will have to be in writing. Fla.Stats. 731.051, F.S.A.; Laws of Florida, Chapter 57.148 (1957). The Wisconsin Act is more restrictive in that in order for wills other than joint wills to constitute a contract, such agreement must affirmatively appear in expressed language on the face of the instrument. Chapter 211, Laws of Wis. 1957.
The appellant relies upon a series of Wisconsin cases which seem to indicate that the mere execution of mutual or reciprocal wills constitutes a contract which cannot later be revoked by a survivor who had benefited by said contract. Doyle v. Fischer, supra. A careful reading of this case discloses that the will involved was a joint will in that both testators executed the same document, and so distributed the property of the husband and wife as to deal fairly upon the death of the survivor with the children of the parties. Although the case refers to joint, mutual and reciprocal wills similarly, there is no indication that had the will not been joint but merely mutual or reciprocal, it would have held to the same effect.
The appellants rely primarily upon Schwartz v. Schwartz, 1956, 273 Wis. 404, 78 N.W.2d 912, which involved a joint will executed simultaneously by both the husband and wife. After the death of the husband, the wife executed a new will revoking the joint will she had executed with her husband. The court held that such revocation constituted a breach of contract and granted relief to third party beneficiaries of such contract who had been adversely affected by the revocation. An analysis of the plan of distribution of the separately owned and jointly owned properties of the parties revealed a plan which, in the main, equitably provided for the children of the parties. Here again the court also refers to joint as well as mutual or reciprocal wills, but there is no indication that had the will not been joint the ruling would have been the same.
A careful search of the Wisconsin reports fails to reveal any cases holding enforceable a contract to execute a mutual or reciprocal will that is not also a single document joint will.
Applying the reasoning of the above cited cases to the matter before the court here, it is our holding, taking into consideration the fact that the wills were mutual or reciprocal and not joint, an analysis of *767 the detailed provisions of the wills and of the absence of facts which would indicate the intention of the parties, that the evidence was insufficient to prove a contract to execute a will.
Affirmed.
SMITH, C. J. and MELVIN, WOODROW M., Associate Judge, concur.