SIPPLE, Appellant, v. ZIMMERMAN, Special Administrator, Respondent.

*No. 198. Argued June 3, 1968.—Decided June 28, 1968.*
(Also reported in 159 N. W. 2d 706.)

482

486

For the appellant there was a brief by *Doar, Drill & Norman* of New Richmond, and oral argument by *James A. Drill.*

For the respondent there was a brief by *Peterson, Thedinga & Peterson* of Menomonie, and by *Wilcox & Wilcox* of Eau Claire, and oral argument by *Francis J. Wilcox.*

BEILFUSS, J.   Two major issues are presented in this appeal:

1. Does the 1953 document fail as a contract because not properly executed as a will?

2. Are there issues of fact raised by any of the affirmative defenses alleged by the defendant which cannot be resolved from the pleadings, involving

(a) The sufficiency of the consideration given Lena Kraft for her agreement;

(b) The plaintiff's execution of the compromise agreement;

(c) The plaintiff's delay in instituting the present action;

(d) Fraud by William F. Kraft perpetrated on Lena Kraft in the signing of the joint will.

In overruling the plaintiff's demurrer to the defendant's answer, the trial court stated in its order it was of the opinion that each defense in the answer raised an equitable defense and was proper. The appeal is from this order. The respondent contends the order overruling the demurrer should be sustained.

The first alleged defense of the defendant, creating the major issue on this appeal, is that there was no contract created by the signing of the 1953 will by Lena Kraft. The defendant admits Lena Kraft signed the document but alleges her signature was not witnessed and cannot be considered a valid will of Lena Kraft. The plaintiff, by demurrer to the answer, admits the proper formalities were not followed. "Of course, it is elementary that a demurrer to a pleading admits all material facts properly pleaded." *Banschbach v. Meuer* (1941), 237 Wis. 454, 462, 297 N. W. 402. The defendant contends the plaintiff also admits by her demurrer that there is no contract in existence. This is not so. While the defendant does deny the existence of a contract in the answer demurred to, the denial that this joint will is a contract is a conclusion of law. Conclusions of law as opposed to matters of fact are not deemed admitted by demurrer.

"By demurring to the complaint the defendant admitted all of the facts well pleaded therein but it did not admit conclusions of law nor did it admit erroneous conclusions drawn from such facts by the pleader even though the conclusions bear the semblance of statements of facts. *Northwestern Mut. Life Ins. Co. v. State,* 173 Wis. 119, 180 N. W. 138; *Olsen v. Ortell,* 264 Wis. 468, 59 N. W. (2d) 473." *Jenkins v. State* (1961), 13 Wis. 2d 503, 507, 508, 108 N. W. 2d 924.

The first question presented, then, is whether Lena Kraft, by signing the 1953 document with her husband as a joint will, entered into a contract albeit the document is not valid as her will.

The language of the 1953 document is contractual. The opening paragraph states that William F. Kraft and Lena Kraft "mutually covenanted and agreed" and "hereby mutually covenant and agree, each in consideration of the promise and act of the other" to provide for the disposition of their property as set forth in the document. The defendant urges that no contract exists because the will was invalid as to Lena Kraft and there being no valid will there is no basis for the contract.

The fact that the will is invalid as to one of the parties is not determinative of whether a contract existed. The mere fact that the formalities necessary to make a will were not present does not render the document invalid as a contract. This court has recognized that even where a mutual or reciprocal will is revoked by one party the contract upon which the reciprocal wills were executed still remains in force and effect:

"It should be borne in mind that it is the contract and not the will that is irrevocable. The authorities generally hold that the will may be revoked, but the contract stands and will be enforced by equity if it be a valid contract and such enforcement is necessary for the prevention of fraud." *Doyle v. Fischer* (1924), 183 Wis. 599, 606, 198 N. W. 763. *See also Estate of Schefe* (1952), 261 Wis. 113, 119, 52 N. W. 2d 375.

The *Doyle Case, supra,* also points out that even without the contractual terms the mere execution of a joint will is conclusive evidence of a contract in cases such as this:

"The fact that these wills constitute but a single document, that they were executed at the same time, that each of the testators knew of the provisions made in the will of the other, that some of the children were provided for by one, and the others by the other, testator, con-

clusively indicates that the two wills resulted from a mutual agreement between the testators and that their provisions were in accordance with such prior agreement." *Doyle v. Fischer, supra,* at page 608.

Recently, in *Estate of Hoeppner* (1966), 32 Wis. 2d 339, 343, 145 N. W. 2d 754, the above rule was reaffirmed as was the following rule which had been adopted by this court in *Schwartz v. Schwartz* (1956), 273 Wis. 404, 412, 78 N. W. 2d 912:

" 'A will which is jointly executed may furnish in itself prima facie proof that it was executed pursuant to a contract between the testators, notwithstanding it does not expressly purport to have been made pursuant to contract, does not contain the word "contract" or "agreement," or include an express promise that the survivor will carry out the dispositions contained in the will.' "

In both *Doyle v. Fischer, supra,* and *Estate of Hoeppner, supra,* no question was raised as to the sufficiency of the execution of the documents as wills by either party. However, the underlying rationale of both cases was that it is the contract and not necessarily the will that is to be enforced.

The defendant cites the case of *Ireland v. Jacobs* (1945), 114 Colo. 168, 174, 163 Pac. 2d 203. In that case a joint will was executed by a husband and wife. The husband died first and the will was probated as his last will. The wife received the entire estate. On the wife's death the same will was again offered for probate, but probate was refused because there was a lack of proof she had complied with the statute governing execution of wills. The court held that there was a failure of consideration where one of the wills failed. A quotation from the case is as follows:

"That Frederick should precede in death, was not foreseeable; but assuming that Bertha had been called first, What then? Had she died first, . . . the will as hers, would have been denied probate. Frederick would then

have taken as provided by statute and the agreement in the will would have failed for lack of consideration. To hold this contract valid, to hold that there was mutual consideration, it would be necessary for the trial court, or this court, to read into the will words that are lacking; to write into the will that Frederick's death prior to Bertha's was preordained. Even such far-fetched reasoning upon our part would be futile in the end, for while courts must interpret a will as best they can, they are powerless to draft and execute a will out of the whole cloth. If Bertha left no will there is nothing before us to interpret. Frederick's administrators would not have been bound by the will because there was none, and there being no promise for a promise the trust would fail."

However, under our concept of agreements to mutually dispose of the separate property of the parties, it is not a will which is sought to be enforced in such actions but the contract. The same is true where mutual or reciprocal wills are executed pursuant to contract and later one party revokes his will. The revoked will is no longer a will, but because of the existence of the contract, its terms are enforced.

The signing of the document in the instant case must be taken to embody a contract between Lena Kraft and her husband. The contract was legally binding unless mutually rescinded by the parties to it. William F. Kraft fulfilled his part of the bargain by leaving the will of 1953 in force. It is well settled that when there is a mutual or reciprocal promise to dispose of separate property at death in a certain manner, and one party does fulfill his part of the agreement, the other party is bound irrevocably:

"We stated in *Schwartz v. Schwartz, supra,* page 410:
" 'After one of the two testators has died it is beyond his power to consent to the survivor modifying or revoking the testamentary disposition which had been agreed was to take place upon the death of the survivor.'
"The terms of the testamentary disposition of 1949 may, therefore, be enforced in equity. The execution of a subsequent will, not being in conformance with a mutually

agreed upon disposition, constituted a breach of contract." *Estate of Hoeppner, supra,* page 345. *See also, Doyle v. Fischer, supra,* and *Pederson v. First Nat. Bank* (1966), 31 Wis. 2d 648, 143 N. W. 2d 425.

Absent any countervailing defenses, we conclude that there was a valid enforceable contract between William F. and Lena Kraft to dispose of their property in the manner specified in the 1953 document. The defendant, however, does allege in his answer affirmative defenses.

Two of the affirmative defenses held by the trial court to be properly alleged involved the consideration received by Lena Kraft for her promises to her husband. The defenses are that there was no consideration, and that there was insufficient consideration and therefore it would be unconscionable to enforce it in equity.

In the 1953 document, William Kraft created a trust of all his property to become effective upon his death. Under the terms of the trust, Lena Kraft was to receive one fourth of the income of this trust for a period of fifteen years after the death of William. In return, Lena promised to have her property transferred to the same trust upon her death. She further agreed to transfer her property to the trust during her lifetime at the time of William's death, if she was the survivor. Both parties were in their eighties when the document was signed in 1953.

"To reaffirm, as we do, the above statement appearing in *Schwartz* does not necessitate our concurrence in respondent's argument for the converse: 'Equity will not grant relief if the survivor does not receive property under the contract.' The important fact is that Emil got what he bargained for. Elsie died leaving in force a will that was agreeable to Emil (as well as to Elsie). This was what he contracted for and this is what he got. He got the benefit of his bargain. Hence, we conclude that, even under the test relied upon by the trial court and urged by the respondent, the survivor was benefited. Alternative dispositions of Elsie's interest in the joint property were foreclosed by her adherence to the contract

to make a mutually agreeable will and her death leaving such a will in force." *Estate of Hoeppner, supra,* pages 345, 346.

It cannot be said that there is no consideration for the contract. William died leaving his will intact. Lena received the right to the disposition of his estate to herself and her children, which she agreed to in 1953. When William died his part of the bargain, insofar as he could control it, was fulfilled. It cannot be said there was no consideration for the contract.

The companion question, namely, whether the consideration between William and Lena was so disproportionate that it renders the contract unenforceable in equity is dependent upon a resolution of the material facts.

It is alleged in the answer and admitted for the purpose of demurrer, that William's net estate was about $931,000 and that in 1953 Lena's separate property was valued at about $375,000. This means she gave up her dower interest of about $310,000, and the use and control of her own estate of about $375,000 in return for one fourth of the income for fifteen years. Fifteen years after his death the trust consisting of both his estate and her property was to terminate and the corpus distributed to the three children. Lena was, however, about eighty years old in 1953 with a life expectancy of about four years. These and other facts as they may appear at the trial must be resolved before the issue of the adequacy of the consideration can be determined.

A related and equitable defense raised by the answer is the allegation that William in reality committed a fraud upon Lena because of his dominance in preparing and keeping the will; his superior knowledge as to the legal requirements of a valid will; and the fact that he retained control of his property until his death render enforcement of the contract unconscionable. We deem

this to be a sufficient allegation to raise the equitable issue of sufficiency of the consideration.

The document purporting to be the joint will of William F. and Lena Kraft is not an artfully drafted instrument. Apparently what the husband was attempting to provide was that Lena Kraft was to convey her property to the trust created by his will upon her death or upon his death, whichever occurred first. She was then to receive one fourth of the income from the trust so created for fifteen years following her husband's death. Under the will thus interpreted, Lena Kraft's obligations under the contract arose upon the death of her husband in 1957. At this time the contract required her to transfer her property to the trust created by her husband's will. Her failure to do so was a breach of the contract. After William Kraft's death the plaintiff should have been receiving some income from the trust had her mother complied with the contract. If the compromise agreement did not bar action against Lena Kraft, the plaintiff had a cause of action at that time for she was entitled to one fourth of the income attributable to that part of the corpus of the trust which should have been contributed by Lena Kraft under the contract. Consequently, two additional defenses alleged in the answer may have merit if the proper facts can be established to support them. The first of these is that a compromise agreement entered into by the plaintiff bars her from proceeding against the estate of Lena Kraft. The second defense raising factual issues is that the plaintiff is barred from asserting her claim by the doctrine of laches.

The plaintiff contested her father's will some time after it was offered for probate. As a result of this contest, in 1962 the plaintiff entered into a compromise agreement with the other interested parties, including Lena Kraft,

which was approved by the county court pursuant to sec. 318.31, Stats. This agreement provided in part:

"7. Each of the parties will, and by the execution of this Agreement, (provided it is approved by the probate court of Dunn County, Wisconsin), and hereby does, release each and everyone of the other parties from any and all claims, or liabilities now existing and which have arisen out of or in connection with the Will of William F. Kraft, deceased, or the probate of that Will and its contest.

"8. Approval of this Agreement by the probate court for Dunn County shall terminate all litigation and all proceedings pending in the Dunn County Probate Court, excepting only the probate of this Estate, but Aurora Sipple and her children shall have no further interest in this probate proceeding nor shall she, her children or any of her heirs, have any further interest in the assets of this estate or of the trust to be established under the will of William F. Kraft, deceased. . . ."

The defendant contends the foregoing is an agreement by the plaintiff to not only make no further claims against her father's estate, but to also forego any claims she may have against her mother's estate. This agreement is ambiguous. It does not appear with certainty from the face of the agreement whether the parties intended the wording "liabilities now existing and which have arisen out of or in connection with the Will of William F. Kraft, deceased" should include the contract of Mrs. Kraft. It is not a strained reading that the parties intended Lena Kraft's obligations under the contract be dissolved. It could be said to be liability arising "in connection" with the will of William F. Kraft. On the other hand, it would not be a strained construction to say that the parties were referring to only those claims against the assets of William F. Kraft at his death. Where a contractual provision may be reasonably taken in more than one sense it is ambiguous. *Martinson v. Brooks Equipment Leasing, Inc.* (1967), 36 Wis. 2d 209, 219, 152 N. W. 2d 849, 154 N. W. 2d 353; *Wheelright v. Pure Milk*

*Asso.* (1932), 208 Wis. 40, 45, 240 N. W. 769, 242 N. W. 486.

" ' ". . . Where such ambiguity does exist, then evidence of the circumstances under which the contract was made is proper to enable the court, in the light thereof, to read the instrument in the sense the parties intended, if that can be done without violence to the rules of language or of law." *Johnson v. Pugh,* 110 Wis. 167, 170, 85 N. W. 641. . . .' "

On oral argument it was suggested that one reason the plaintiff may have delayed the suit was simply because she felt she had compromised any cause of action she had. If such was the case, this fact would be helpful in determining the intent of the plaintiff and the other parties when they entered into the compromise.

" 'When the language of a contract is not clear and unambiguous the practical construction given to it by the acts of the parties is of "great force" or "entitled to great weight." ' *Cutler-Hammer, Inc. v. Industrial Comm.* (1961), 13 Wis. 2d 618, 632, 109 N. W. 2d 468. *See also Joseph Mann Library Asso. v. Two Rivers* (1956), 272 Wis. 441, 446, 76 N. W. 2d 388; *Georgiades v. Glickman* (1956), 272 Wis. 257, 75 N. W. 2d 573." *Martinson v. Brooks Equipment Leasing, Inc., supra,* at page 219.

This issue must also be determined at trial after the taking of evidence.

In addition there are factual issues which arise concerning whether or not the plaintiff should be barred by the doctrine of laches for not bringing the action for nine years after the right of action accrued.[1]

"The equitable doctrine of laches is a recognition that a party ought not to be heard when he has not asserted his

[1] The ordinary six-year statutory limitation on actions on contract (sec. 893.19) does not bar the action because the instrument involved is a sealed instrument. Sec. 893.16, Stats., provides: "Within 20 years. . . . (2) An action upon a sealed instrument when the cause of action accrues within this state, except those mentioned in ss. 19.015, 321.02, 893.19 and 893.20 (2)."

right for unreasonable length of time or that he was lacking in diligence in discovering and asserting his right in such a manner so as to place the other party at a disadvantage." *Bade v. Badger Mut. Ins. Co.* (1966), 31 Wis. 2d 38, 47, 142 N. W. 2d 218.

"Moreover, an essential element of the defense of laches is that the delay in the institution of suit has resulted in prejudice to the party asserting such defense. *Estate of Seefeldt* (1957), 1 Wis. (2d) 509, 516, 85 N. W. (2d) 500." *S. D. Realty Co. v. Sewerage Comm.* (1961), 15 Wis. 2d 15, 23, 112 N. W. 2d 177.

The extent of prejudice from the delay is an issue of fact which must be determined before laches can be ruled out as a defense. Plaintiff contends there is nothing in the record to show the prejudice because of the delay. On the record before the court prejudice might even be presumed because the action has been delayed until the major party involved, Lena Kraft, has died. Her testimony as to the intent of the compromise agreement when executed and to the construction of the parties placed on the agreement after execution may have died with her. The death of a witness is to be considered in ascertaining stale demands. *Russell v. Fish* (1912), 149 Wis. 122, 135 N. W. 531.

The plaintiff, by contesting the will of her father and obtaining the compromise, was imposing upon the dispository plan of both her mother and father. It would not be an irrational inference that her mother intended the compromise agreement would allow her to be free to replan the disposition of her property.

The defendant also contends that the plaintiff should be barred from relief by the "clean hands" doctrine because of her prior contest of her father's will and the resultant interruption of the estate plan. This assertion may be considered in determining whether prejudice to the defendant resulted from plaintiff's delay in instituting the action.

The facts as alleged in the answer are sufficient to state a defense to plaintiff's cause of action and the demurrer to the answer was properly overruled.

*By the Court.*—Order affirmed, and remanded for further proceedings.